UNITED SERVICES AUTOMOBILE ASSOCIATION *v.*
BONITA L. C. MARBURG ET AL.
(AC 16387)

Dupont, C. J., and Landau and Shea, Js.

Argued May 1—officially released August 5, 1997

*Robert B. Bellitto,* for the appellants (defendant Margaret A. Fabrizio et al.).

*Edmund T. Curran,* for the appellee (plaintiff).

*Opinion*

DUPONT, C. J. This case arose when the plaintiff, United Services Automobile Association (USAA), sought a declaratory judgment[1] that, under its contract

---

[1] Although this is an action for declaratory judgment in which notice was not given to anyone other than the named parties; see *Serrani* v. *Board of Ethics,* 225 Conn. 305, 622 A.2d 1009 (1993); we conclude that all parties having an interest in this case are parties, and that, therefore, there is no

of homeowners insurance with the defendant Bonita L. C. Marburg, it had no duty either to defend or to indemnify Marburg for any judgment rendered against her in a lawsuit brought by a child and his mother, who are also defendants in this action.

The child and his mother instituted an action against Marburg in August, 1993, alleging that in 1991, when the child was eleven and twelve years old, Marburg had sexually abused him on at least seventy-three occasions during tutoring sessions.[2] The Stratford school system had referred the child to Marburg for such tutoring. The child and his mother claimed that, as a result of the sexual abuse, which involved intercourse, sodomy and fellatio, the child suffered serious psychological and emotional injury. He and his mother also incurred substantial expenses for medical and psychological care as a result.

Counts one, three and five of the amended complaint of the child and his mother against Marburg contained allegations by the child of sexual misconduct, sounding, respectively, in assault and battery, negligence, and negligent infliction of emotional distress. Counts two, four and six mirrored one, three and five, but were brought by the child's mother and sought damages for expenses incurred. Count seven asked for punitive damages because of the egregious and unconscionable nature of the sexual misconduct. The eighth count alleged a fraudulent transfer of assets to Marburg's husband, John Marburg, also named as a defendant.

On November 28, 1995, the child and his mother filed a substitute complaint against Marburg. Although alleg-

jurisdictional obstacle to deciding this appeal. See *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 228, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997).

[2] The case of the child and his mother versus Marburg was still pending at the time the plaintiff filed its declaratory judgment action. The plaintiff chose to defend Marburg in that action pursuant to a reservation of its rights to contest coverage.

ing the same sexual misconduct, it eliminated counts one, two, seven and eight, leaving only the counts alleging negligent misconduct.

Within two weeks of filing the substitute complaint, the child and his mother and Marburg stipulated to judgment for the child and his mother. They also drafted a separate written covenant, in which the child and his mother agreed that if Marburg gave full cooperation to the child and his mother in both cases, the child and his mother would not seek to satisfy any judgment rendered against Marburg from any real, personal or other property owned by her.

At the time of the alleged events, Marburg and her husband were the named insureds under a homeowners insurance policy issued by USAA. Although the policy provided coverage for "damages because of bodily injury or property damage," it excluded coverage for damages resulting from "bodily injury . . . which is expected or intended by the insured [or] arising out of or in connection with a business engaged in by an insured."

USAA sought summary judgment on the portion of its declaratory judgment claim in which it sought a declaration that it owed no duty to indemnify Marburg against the claims of the child and his mother.[3] It argued that no material issue of fact existed as to whether all of the damages of the child and his mother fell within the "expected-or-intended-injury" exclusion and the "business-pursuits" exclusion, and, thus, the damages would be excluded from coverage as a matter of law.[4]

---

[3] Summary judgment may be sought in a declaratory judgment action because Practice Book § 379 provides in relevant part: "In any action, except actions for dissolution of marriage, legal separation, or annulment of marriage, and except administrative appeals which are not enumerated in Sec. 275 (d), any party may move for summary judgment at any time . . . ."

[4] Although the plaintiff's motion for summary judgment included both exceptions from coverage as its basis, we, like the trial court, need not discuss the business exclusion of the policy in view of our decision as to

The child and his mother opposed the motion, stating that there were material issues of fact regarding Marburg's intent to harm the child and regarding the business pursuits exception. Specifically, they alleged that Marburg suffered from a mental disease or defect that prevented her from forming an intent to cause the child harm, and that at least some of Marburg's sexual misconduct did not occur during her tutoring sessions with the child. The plaintiff claims that there is no coverage because Marburg's acts were intentional and because the damages did arise out of or in connection with business pursuits. The trial court granted the plaintiff's motion for summary judgment.

The standard of review for summary judgment is well established. "Practice Book § 384 mandates that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Fernandez* v. *Standard Fire Ins. Co.*, 44 Conn. App. 220, 222, 688 A.2d 349 (1997).

the exclusion for intentional acts. No party has briefed the exclusion from coverage based on a business exception.

Many cases from other jurisdictions have held, under a doctrine of presumption of intent, that acts of sexual molestation of minors are so heinous that intent to cause harm is presumed as a matter of law. See annot., 31 A.L.R.4th 957, § 5 (b) (1984). The trial court in this case limited the doctrine of presumption of intent to cause harm to minors to situations where the actor is aware of the minority of the victim. The court specifically found that Marburg possessed the requisite intent because Marburg was aware of the child's age.

The court reasoned that Marburg is presumed to know the law, and, therefore, she knew that the sexual acts were in violation of the criminal laws that prohibit such activities with minors. This presumption supports the conclusion that when Marburg engaged in the misconduct with knowledge of the victim's age, she intended to cause her victim injury, as a matter of law. The defendants claim that the presumption is rebuttable, and that they have sufficiently raised an issue of fact that could rebut the presumption that Marburg intended to cause harm. Marburg claims that she suffered from a mental illness that made her incapable of forming such intent.[5]

An insured's conduct can be considered unintentional in situations such as those here only if the insured can produce evidence to show that she did not intend to cause the damage. See *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 205–206, 663 A.2d 1001 (1995). If the insured cannot show that her behavior

---

[5] A presumption of law is one that arises from the force of the law of the jurisdiction and is founded on public policy, social convenience or safety. Ballantine's Law Dictionary (3d Ed. 1969); see also *Anderson* v. *Litchfield*, 4 Conn. App. 24, 28, 492 A.2d 210 (1985); *Woycik* v. *Woycik*, 13 Conn. App. 518, 522–23, 537 A.2d 541 (1988). Such presumptions may be irrebuttable or rebuttable. Ballantine's Law Dictionary (3d Ed. 1969); see also *Katz* v. *West Hartford*, 191 Conn. 594, 603 n.3, 469 A.2d 410 (1983). The presumption of intent here is rebuttable.

was unintentional, the presumption of intent remains intact, and the exclusion of the homeowners policy precludes coverage. Id.

"It is axiomatic, in the tort lexicon, that intentional conduct and negligent conduct, although differing only by a matter of degree; *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 103, 491 A.2d 368 (1985); are separate and mutually exclusive. 'The distinction between intentional and unintentional invasions draws a bright line of separation among shadings of almost infinitely varied human experiences.' W. Prosser & W. Keeton, Torts (5th Ed. 1984) p. 33. Although in a given case there may be doubt about whether one acted intentionally or negligently, the difference in meaning is clear. 'As Holmes observed, even a dog knows the difference between being tripped over and being kicked.' Id." *American National Fire Ins. Co.* v. *Schuss*, 221 Conn. 768, 775–76, 607 A.2d 418 (1992).

"In its most common usage, 'intent' involves '(1) . . . a *state of mind* (2) about *consequences* of an act (or omission) and not about the act itself, and (3) it extends not only to having in the mind a purpose (or desire) to bring about given consequences but also to having in mind a belief (or knowledge) that given consequences are substantially certain to result from the act.' . . . [W. Prosser & W. Keeton, supra, p. 34.] Also, the intentional state of mind must exist when the act occurs. Id. Thus, intentional conduct 'extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does.' Id., p. 35. Furthermore, '[i]t is not essential that the precise injury which was done be the one intended.' *Alteiri* v. *Colasso*, 168 Conn. 329, 334, 362 A.2d 798 (1975). 'Rather, it is an intent to bring about a result which will invade the interests of another in a way that the law forbids.' W. Prosser & W. Keeton, supra, p. 36. Our case law accords

with these principles. See, e.g., *Mingachos* v. *CBS, Inc.*, supra [196 Conn. 103]; *Alteiri* v. *Colasso*, supra [334]." (Emphasis in original.) *American National Fire Ins. Co.* v. *Schuss*, supra, 221 Conn. 776.

The defendants rely on the case of *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 35 Conn. App. 94, 644 A.2d 933 (1994), rev'd on other grounds, 235 Conn. 185, 663 A.2d 1001 (1995),[6] to support their claim that Marburg's mental disorder prevented her from controlling her actions and, therefore, made her incapable of forming an intent to injure. In *Home Ins. Co.*, we held that in order to determine whether an insured's acts were intentional for purposes of a policy's intentional act exclusion clause, we must consider "whether, because of mental illness or defect, the insured did not understand the nature or wrongfulness of [her] conduct, or was deprived of the capacity to control [her] actions regardless of [her] understanding of the nature or wrongfulness of [her] action." Id., 106–107;[7] see *State Farm Fire & Casualty Co.* v. *Wicka*, 474 N.W.2d 324, 331 (Minn. 1991).

We now examine whether the defendants have produced any evidence to show that Marburg did not intend to cause harm. If they have produced any such evidence, a material issue of fact would be in dispute, but, if they have not, no material issue would be in dispute, and the defendants would be entitled to summary judgment.

---

[6] On appeal, the Supreme Court determined that the Appellate Court had improperly remanded the case to the trial court on the ground that a material issue of fact existed concerning the insured's mental state at the time he committed the acts. The Supreme Court held that the insured's mental state had not been put into issue at the trial court and, therefore, affirmed the trial court's rendering of summary judgment. *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn 185, 663 A.2d 1001 (1995).

[7] The Supreme Court, in reviewing that decision, did not reach the question of whether the standard was correct. *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, supra, 235 Conn. 206 n.19. Although we believe that standard to be correct, for the purposes of this decision, we need not reach the issue because, under any of the three standards, our conclusion would be the same.

In support of their opposition to the plaintiff's motion for summary judgment, the defendants attached an affidavit of Irene R. Kitzman, Marburg's treating psychiatric physician (Kitzman affidavit), and a letter, dated October 27, 1995, from Ronald T. Markby, a physician, to one of Marburg's attorneys, Ralph L. Palmesi (Markby letter). We agree with the trial court that neither the Markby letter nor the Kitzman affidavit supports a finding of lack of intent of Marburg.

The Markby letter is not competent evidence to support an opposition to a motion for summary judgment. See Practice Book § 380;[8] see also *Scinto* v. *Stamm*, 224 Conn. 524, 533, 620 A.2d 99, cert. denied, 510 U.S. 861, 114 S. Ct. 176, 126 L. Ed. 2d 136 (1993) (stating "[u]nsworn assertions of fact, summary conclusions of law and unsupported allegations in an affidavit do not entitle a party to summary judgment"); *Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 12, 459 A.2d 115 (1983); *2830 Whitney Avenue* v. *Heritage Canal Development Associates*, 33 Conn. App. 563, 567, 636 A.2d 1377 (1994) ("[t]he existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence"). Practice Book § 380, although containing the phrase "including but not limited to," contemplates that supporting documents to a motion for summary judgment be made under oath or be otherwise reliable. Practice Book §§ 380 through 382 set forth detailed requirements to ensure that affidavits in support of summary judgment are proper. Those

---

[8] Practice Book § 380 provides: "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions *and the like*. The motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion and the supporting materials, unless the court otherwise directs. The adverse party prior to the day the case is set down for short calendar shall file opposing affidavits and other available documentary evidence. Affidavits, and other documentary proof not already a part of the file, shall be filed and served as are pleadings." (Emphasis added.)

rules would be meaningless if they could be circumvented by filing unsworn letters written to an attorney for a party in support of or in opposition to summary judgment. The trial court acted properly when it did not consider the Markby letter in support of the defendants' position on the summary judgment motion.

The defendants' only other support of their opposition to summary judgment is the Kitzman affidavit.[9] As the trial court stated, "Kitzman's affidavit, though providing a definite diagnosis of Marburg's psychiatric condition in the relevant time frame, states no facts or opinions from which it might reasonably be inferred that because of that condition, Marburg was incapable of controlling her conduct toward [the child] or of forming an intent to cause him injury. On that score, it offers no functional description of major depressive disorder without melancholia; it does not state why Marburg was diagnosed as suffering therefrom; it makes no mention of any symptoms or results of the disorder experienced by Marburg in the course of her treatment; and it otherwise fails to give any reason for believing that the disorder, either typically or as suffered by Marburg, involves or causes behavior control problems of the sort here claimed by the defense."

---

[9] The Kitzman affidavit states: "I, Irene R. Kitzman, M.D., being sworn state: 1. I was Mrs. Marburg's treating psychiatric physician from May 24, 1989 through June 23, 1989, and again from January 10, 1991 through April 8, 1993. 2. I treated Mrs. Marburg for recurrent episodes of Major Depressive Disorder, without Melancholia. 3. I am a Board Certified Psychiatrist, receiving such certification in November, 1985. 4. I received my psychiatric residence training at Yale University School of Medicine, and my medical training at Albert Einstein College of Medicine in New York City. 5. While in my treatment, Mrs. Marburg knew that she had a problem predisposing her to impulsive sexual promiscuity. 6. While in her treatment with me, Mrs. Marburg neglected to tell me that she has become sexually attracted to or sexually involved with [the child]. If she had made an effort to tell me of this or asked for my help, either prior to or during the time she was having relations with [the child], it is in the realm of reasonable medical probability that I could have treated her for this problem."

What the affidavit says about Marburg's sexual pro-clivities is that Marburg knew she had a problem predis-posing her to impulsive sexual promiscuity but did not inform her physician of her involvement with the child. Those statements are important both for what they state and what they do not state. The statements reveal that Marburg was never treated by Kitzman for a psychiatric problem involving sexual attraction to young boys, such as the child involved here, because she never told Kitz-man about her sexual involvement with him. A logical assumption is that the psychiatric problem with which Marburg was diagnosed, major depressive disorder without melancholia, does not typically involve such sexual problems, or else Kitzman would have treated her for such a problem.

The affidavit also does not state, to a reasonable or to any degree of medical probability, that Marburg actually suffered from a problem involving sexual attraction to young boys. In fact, the one statement in the affidavit that seems to support that proposition, that Marburg knew that she had a problem predisposing her to impulsive sexual promiscuity, is not a diagnosis based on a reasonable medical probability but, rather, is hearsay. Finally, we agree with the trial court that even if "Kitzman's hearsay statement as to Marburg's self-described predisposition to impulsive sexual pro-miscuity could properly be considered on this summary judgment motion, it would not support an inference that that predisposition, if indeed she had one, made her incapable, because of mental illness, of controlling her actions or of forming an intent. That a person is predisposed to engage impulsively in particular conduct by no means suggests that she has lost the ability to prevent herself from engaging in that conduct." Any such predisposition, even if treatable by Kitzman had

she been told about it, does not necessarily have anything to do with Marburg's alleged inability to form an intent to harm the child. This hearsay statement is substantively lacking to prove Marburg's capacity to control her actions or to prove an inability to intend to cause injury.

The defendants did not sustain their burden of providing an evidentiary foundation to demonstrate that a genuine issue of material fact existed. They claim that it is not their burden to demonstrate the existence of an issue of material fact but, rather, the plaintiff's burden to show the lack of one. "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 664–65, 646 A.2d 143 (1994). Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. See Practice Book § 381." (Internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, supra, 235 Conn. 202–203 (1995).

USAA was entitled to rely on the doctrine of presumption of intent to show that Marburg intended to injure the child when she engaged in sexual acts with him, knowing that he was twelve years old or younger. Without a countervailing demonstration by the insured sufficient to rebut the presumption and to put a material

fact in issue, Marburg's acts were within the intentional act exclusion of her USAA policy. Summary judgment was proper.

The judgment is affirmed.

In this opinion LANDAU, J., concurred.

SHEA, J., concurring. I agree with the majority in affirming the summary judgment of the trial court declaring that the insurance policy issued by the plaintiff to the defendant Bonita L. C. Marburg does not apply to the claims against Marburg arising out of her sexual relationship with the defendant minor child. In this case, however, there is no need to decide whether this court should join those jurisdictions that have adopted the presumption that sexual molestation of a minor child raises a presumption of intent to harm the child as a matter of law and, therefore, falls within the policy exclusion of liability for damages resulting from the intentional conduct of an insured.

The affidavits of the child and his mother supporting the motion for summary judgment, which have not been controverted, narrate the circumstances of the relationship between the child and Marburg. The facts recited in those documents plainly indicate that Marburg realized that the child had not reached the age necessary for consent to sexual intercourse. I agree with the majority that the two counteraffidavits filed in behalf of the defendants are insufficient to raise an issue of fact with respect to the mental condition of Marburg that would affect the conclusion to be drawn from the affidavits of the mother and the child that her conduct was intentional.