[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGEMENT
On August 28, 1997, the plaintiff, D.A.N. Joint Venture (D.A.N.) filed a one-count complaint against the defendants, Catherine and Joseph Salinardi (the Salinardis), seeking a judgment of strict foreclosure.[1]D.A.N. alleges that on November 2, 1987 the Bank of New Haven (BNH) loaned the Salinardis $350,000.00, for which the Salinardis executed a note (Original Note) on that day in the same amount payable to BNH. D.A.N. alleges that the Salinardis secured the Original Note with an "Open-End Mortgage evidencing a revolving line of credit" (Original Mortgage) on real property known as 19 Grouse Lane. Woodbridge, Connecticut. The mortgage was duly recorded on November 6, 1987,[2] D.A.N. also alleges that on September 8, 1994 BNH assigned its interest in the Original Note and Original Mortgage to D.A.N., which assignment was duly recorded on September 23, 1994.
D.A.N. further alleges that it entered into a "renewal, extension and modification Agreement of the Note and Mortgage" (Renewal Agreement) on December 8, 1995, which was duly recorded on January 9, 1996. D.A.N. further alleges that it is "the owner of and holder of said Note executed by said Mortgage"; the note and mortgage are now in default "by virtue of non-payment of monthly installments due in March, 1987 and each and every month thereafter, 2nd that [it] has exercised its option to declare the entire balance of the Note due and payable." D.A.N. claims the "present unpaid principal balance due under the Note is $397,547.37, plus interest through May 21, 1997 of $29,685.73, which continues to accrue at $115.95 per diem, as well as late charges to the present."
Attached to the complaint is the Original Note payable to BNH, identified as Exhibit A, in which the amount of credit provided to the Salinardis is stated as $350,000.00 at an annual percentage rate of 10.90% ($38,147.57 in finance charges). The repayment terms of the note are limited to the payment of interest on the sixth of each month, beginning December 6, CT Page 9103 1987."[3]
Also attached to the complaint and identified as Exhibit B is the Original Mortgage entitled "OPEN-END MORTGAGE EVIDENCING A REVOLVING LINE OF CREDIT." The Original Mortgage contains the following language: "TO SECURE to lender on condition of the repayment of the indebtedness evidenced by the Borrower's Note dated November 2, 1987, herein referred to as the "Note," in the principal sum of THREE HUNDRED FIFTY THOUSAND ($350,000.00) DOLLARS with interest thereon, providing for payments as set forth in said Note, if not sooner paid, due and payable on demand. . . ." Under the heading, "Future Advances; Revolving Loan," the mortgage provides: "Upon request of Lender, at Lender's option prior to release of this Mortgage, may make future advances to Borrower pursuant to a Revolving Loan Agreement as evidenced by the Note guaranteed . . . Such future advances, with interest thereon, shall be secured by this Mortgage, however at no time shall the principal amount of the indebtedness secured by this Mortgage exceed the original amount of the Note nor shall the maturity of future advances secured hereby extend beyond demand." The mortgage deed, under the heading "Successors and Assigns Bound; Joint and Several Liability; Captions," further provides that "[t]he covenants and agreements herein contained shall bind and the rights hereunder shall inure to the respective successors and assigns of Lender and Borrower. . . ."
On April 3, 1998, the Salinardis filed a motion to amend their answer along with an amended answer,[4] seven special defenses and two counterclaims. The Salinardis admit, inter alia, that BNH assigned the Original Mortgage to D.A.N. They deny, however, that BNH assigned the Original Note to D.A.N.; that they entered into a renewal, extension and modification agreement of the Original Mortgage and Original Note; and that D.A.N. is the owner and holder of the note. They further deny that the Original Note and Original Mortgage are now in default; and that the present principal balance due under the note is $397,547.37 in addition to interest of $29,685.73.
The Salinardis assert several defenses: the applicable statute of limitations; failure of consideration; violation of Regulation B of the Federal Equal Credit Opportunity Act, 12 C.F.R. Part 202.7; violation of General Statutes § 49-4a; and the violation of federal and state truth in lending laws. The Salinardis also assert that D.A.N.'s claim is barred because the CT Page 9104 "Renewal Note" differs materially from the Original Mortgage and from terms set forth in the Renewal Agreement. The Salinardis further assert that the claim is barred because D.A.N. attempted to add interest to the principal, "compounding the interest significantly so that the defendants would be paying interest on interest, at least to the extent of $53,692.42" and that the "Renewal Note" sets forth additional amortization payments not found in the agreement, which increase the percentage rate to a level in excess of twelve.
By way of counterclaim, the Salinardis allege special loss and damage for payments made pursuant to the alleged "Renewal Note." They also seek damages under the Connecticut Unfair Trade Practices Act, § 42-110 et seq. claiming that "the plaintiff acted in an immoral, oppressive, unethical, unscrupulous manner, and caused substantial injury to consumers, competitors and other businessmen."
D.A.N. has filed a motion for summary judgment[5] against the Salinardis on the ground that since there are no genuine issues of material fact it is entitled to judgment as a matter of law.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Dept. of Social Services v. Saunders,247 Conn. 686, 696, ___ A.2d ___ (1999). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." United Oil Co. v. UrbanDevelopment Commissions, 158 Conn. 364, 379, 260 A.2d 596 (1969). "A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted.) Id., 378.
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Orkney v.Hanover Insurance Co., 248 Conn. 195, 201, ___ A.2d ___ (1999). Furthermore, the court may consider not only the facts presented by the parties' affidavits and exhibits, but also "the inferences which could be reasonably and logically drawn from them . . ."United Services Automobile Assn. v. Marburg, CT Page 910546 Conn. App. 99, 107-08, 698 A.2d 914 (1997). "As the party moving for summary judgment, the plaintiff is required to support its motion with supporting documentation, including affidavits." HeymanAssociates No. 1 v. Insurance Co. of Pennsylvania, 235 Conn. 756,796, 653 A.2d 122 (1995). "Although the party seeking summary judgment has the burden of showing the non-existence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.)United Services Automobile Assn. v. Marburg, supra,46 Conn. App. 110.
In its supporting memorandum, D.A.N. argues that it is entitled to summary judgment because the Salinardis "have defaulted on their obligation pursuant to a Promissory Note" and "have not paid the Plaintiff in accordance with the renewed Note and Modification Agreement." D.A.N. further argues that the Salinardis' special defenses and counterclaims should not prevent the court from entering judgment in its favor. As to the Salinardis' first special defense, D.A.N. argues that the statute of limitations is inapplicable to its claim because it is "attempting to foreclose on the mortgage which is secured by the modified note," and that the Salinardis' default on the modified note (to which the Salinardis refer as "Renewal Note") in May 1997, is within the six year period under the Connecticut Statutes. D.A.N. further argues that even if six years have passed since the Salinardis defaulted on the original note, they lost the defense of the statute of limitations by their unequivocal acknowledgement of the debt evidenced by signing the renewal agreement and their payments as recent as 1997.
As to the Salinardis' second special defense, D.A.N. argues that the mutual obligations contained in the modification agreement are sufficient consideration to support the validity of the agreement. As to the third special defense, D.A.N. argues the Federal Credit Opportunity Act, 12 C.F.R. § 202.7, is not applicable to the present action because the Salinardis voluntarily entered into a modification agreement which altered the terms of the Note and because this action does not concern an open-end account. As to the fourth special defense, D.A.N. argues that § 49-4a does not apply to it because it is a limited partnership and outside the term "mortgagee" as defined by the statute. As to the Salinardis' fifth special defense, D.A.N. argues that the renewal note and the modification agreement do CT Page 9106 not defeat the plaintiff's cause of action. As to the sixth special defense, D.A.N. argues that the usury statute, § 37-4, does not apply to a mortgage of real property in excess of $5,000.00. As to the Salinardis' seventh special defense, D.A.N. argues that state and federal truth in lending laws do not apply because the mortgage at issue is not a residential mortgage "created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling. D.A.N. also argues that the Salinardis' counterclaims seeking damages for its alleged violations of federal and state truth in lending acts and for alleged violations of the Connecticut Unfair Trade Practices Act have no basis and should be decided in the plaintiff's favor. Attached to D.A.N.'s memorandum is the affidavit of Alan Adams, account officer for D.A.N., dated July 9, 1998. Alan Adams attests that the note executed between the Salinardis and BNH on November 2, 1987 was assigned by BNH to D.A.N.; Adams Affid., ¶ 3; that "the principal amount of said note was $350,000.00 and the interest rate on said note was 10.90% per annum." Adams Affid., ¶ 5. Adams also attests that "[o]n or about December 28, 1995, [D.A.N.] and [the Salinardisi entered into a Renewal, Extension and Modification Agreement"; Adams Affid., ¶ 6; which "reduced said interest rate to 10.50% per annum." Adams Affid., ¶ 7. He further attests that the Salinardis defaulted on their obligation under the modification agreement on or about May 22, 1997; Adams Affid., ¶ 8; and the last payment giving rise to the default was on or about May 27, 1997. Adams Affid., ¶ 9.
In addition to providing the affidavit and a copy of the original note and mortgage, which are discussed above, D.A.N. attached a copy of the "Renewal, Extension, and Modification Agreement" to its memorandum of law. Executed on December 8, 1995, the agreement recites that the original note and mortgage deed have been assigned to D.A.N., the principal balance due and owing on the note is $350,000.00 and accrued interest and other charges accrued are $53,692.42 as of the date of agreement, and that the note is payable on demand. Part I of the Renewal Agreement further provides for an interest rate of 10.50% per annum and a payment schedule by which the Salinardis would make a $5,000.00 payment on December 15, 1995 and thereafter sixty consecutive monthly payments of $4,058.59.
The Salinardis have filed an objection to D.A.N.'s motion for summary judgment. In the objection, the Salinardis argue that the motion should be denied on procedural grounds because the present CT Page 9107 motion provides no additional evidence and is identical to D.A.N.'s motion for summary judgment, filed March 27, 1998, which was denied by the court, Celotto, J. See footnote 5. The Salinardis rely on the arguments which they presented in their memorandum in opposition to D.A.N.'s previous motion for summary judgment. That memorandum in opposition is dated April 16, 1998 and is attached to their present opposition.
In their accompanying memorandum of law, the Salinardis argue that issues of material fact exist as to which note D.A.N. is directing its claim, and as to the principal amount of the mortgage debt. The Salinardis also argue that the renewal note and mortgage are invalid because the renewal note exceeds the amount of the original mortgage in violation of General Statutes § 49-2 (c) and of Section 18 of the original mortgage deed. The Salinardis additionally reiterate their seven special defenses and two counterclaims as grounds for the denial of summary judgment in favor of D.A.N.
Attached to the Salinardis' memorandum is the affidavit of Joseph Salinardi, codefendant in the case. In the affidavit, Salinardi attests that "[a]lthough I had other assets, including securities worth at least $250,000 and property with equity of at least $150,000 . . . the Bank of New Haven required that my wife sign the November 2, 1997 Demand Note . . . and a mortgage." Salinardi Affid., ¶ 5. He further attests that in December 1995, D.A.N. required him and his wife, Catherine Salinardi, to execute a Renewal Note in conjunction with the Renewal, Extension and Modification Agreement. Salinardi Affid., ¶ 7. Salinardi attests that at the time these documents were executed and thereafter, "no Truth in Lending Act disclosures . . . were given or made by the plaintiff to my wife or to myself, notwithstanding the new principal balance and new credit terms stated therein." Salinardi Affid., ¶ 8. Salinardi also attests that BNH commenced a foreclosure action on the November 2, 1987 Demand Note in 1990. Salinardi Affid., ¶ 9.
In addition to providing the affidavit and other documents, including a copy of the Original Note and Mortgage and the 1990 Bank of New Haven complaint, the Salinardis attached to their memorandum a copy of the Renewal Note, dated December 8, 1995. Under the heading "BORROWER'S PROMISE TO PAY," the note provides: "In return for a loan that I have received, I promise to pay $403,692.42 (this amount is called "principal"), plus interest to . . . D.A.N. JOINT VENTURE, A LIMITED PARTNERSHIP . . ." CT Page 9108 Renewal Note, § 1. The note states a yearly interest rate of 10.50%; Renewal Note, § 2.; and a payment schedule which conforms to the terms of the Renewal Agreement; Renewal Note, § 3(A) and (B).
The note further provides the following additional amortization requirements: $15,000.00 payment to be paid on or before December 15, 1996 and three $20,000.00 payments to be paid on or before December 15th of 1997, 1998 and 1999. Renewal Note, § 3(C). The note also provides under the heading, "RENEWAL, EXTENSION AND MODIFICATION": "As provided in a Renewal, Extension and Modification Agreement of even date herewith between Lender and Borrower, this Note is given in renewal and extension of the indebtedness represented by a promissory note dated November 2, 1987, in the principal sum of $350,000.00, executed by Borrower and payable to the order of THE BANK OF NEW HAVEN, and is secured by a mortgage dated November 2, 1987 . . . said Note and Mortgage having been assigned to Lender." Renewal Note, § 9. Additionally, the note provides in the event that a law which sets maximum interest rates is interpreted to mean that the interest charged in the note is beyond the legal limit, the lender will reduce the interest rate so that it conforms to applicable law and will refund amounts already paid in excess of the legally allowable limit. Renewal Note, § 5.
This court finds that genuine issues of material fact preclude the granting of D.A.N.'s motion for summary judgment for the reason that it is unclear as to which note should be the focus of the judgment. In its complaint, D.A.N. alleges that it is the owner and holder of the Original Note and Mortgage between BNH and the Salinardis; Compl., ¶ 7; and that the principal balance on the note is $350,000.00. Compl. ¶ 1. D.A.N. also alleges that on December 8, 1995 the Salinardis entered into a "renewal, extension and modification agreement" which modified the note and mortgage between BNH and the Salinardis. Compl., ¶ 5. D.A.n. further alleges, however, that the principal balance due under the note is $397,547.37 plus interest, or $47,547.37 above the principal balance recited in the Original Note. Compl., ¶ 9. Nowhere in the complaint or elsewhere in its offered evidence does D.A.N. acknowledge the existence of a Renewal Note.
Nevertheless, D.A.N. in its memorandum of law in support of the motion for summary judgment, dated July 13, 1998, unequivocally states that "the Plaintiff is attempting to foreclose on the mortgage which is secured by the modified note." CT Page 9109 D.A.N. Mem., § B (1), ¶ 3. Although at first glance the term "modified note" appears ambiguous, meaning it could refer to either note, the preceding sentence makes it clear that D.A.N. intends the term to mean the Renewal Note: "The Salinardis imply that the Statute of Limitations is applicable to this action because the original note was executed in 1987. However, the Plaintiff is attempting to foreclose on the mortgage which is secured by the modified note." Id.
At oral argument, D.A.N. argued that the modification agreement dated December 1995 modified the Original Note. D.A.N. also argued, however, that "[i]n terms of the renewal note, that clouds the issue. We will say, assuming arguendo [the Renewal Note] is what is being enforced, we are saying [the Renewal Note] did not extinguish the Bank of New Haven note." Tr., 3/15/99, 8. D.A.N. further argued: "Assuming arguendo, that [the Renewal Note] extinguished [the Original Note], you still have to look at the fact that it is inextricably linked because it is both recited to and referenced back to the Bank of New Haven note and in neither situation does it say it extinguishes the note. Only that it modifies it." Tr., 3/15/99, p. 9. D.A.N. then stated, contrary to the principal balance recited in the complaint, that it was claiming a principal balance due of $350,000.00 plus interest. Tr., 3/15/99, p. 10.
Yet a Renewal Note executed by the parties and dated December 8, 1995 does exist, as evidenced by a copy attached to the Salinardis' memorandum of law in opposition to the plaintiff's motion for summary judgment, dated April 16, 1998. Section nine of the Renewal Note states: "As provided in a Renewal, Extension, and Modification Agreement of even date herewith between Lender and Borrower, this Note is given in renewal and extension of the indebtedness represented by a promissory note dated November 2, 1987, in the principal sum of $350,000.00."
At oral argument, the Salinardis responded that they executed a renewal note dated December 8, 1995 in favor of D.A.N., reciting "an outstanding principal balance of more than four hundred three thousand dollars." Tr., 3/15/99, p. 3. The Salinardis further argued: "On December 22, `95, subsequent to this renewal note . . . a renewal extension and modification agreement [was] entered into." Id. Thus, contrary to D.A.N.'s allegations in the complaint and the Adams affidavit, that the Renewal Agreement solely modified and renewed the Original Note, the Salinardis argued that three different obligations exist: the CT Page 9110 Original Note, the Renewal Note, and the Renewal Agreement. The Salinardis further argued through counsel, contrary to D.A.N.'s claim arguendo that the Renewal Note would not have extinguished the Original Note, that "[i]f we buy counsel's argument that we can forget about the four hundred three thousand dollar note and only look to the three hundred fifty thousand dollars and look to the extension, he hasn't given any legal effect to his own client's note created by his client, signed by my client for four hundred three thousand dollars that has to have legal significance." Tr., 3/15/99, p. 11. The Salinardis also claimed that based on D.A.N.'s assertion that the Renewal Note would not have extinguished the Original Note, they could be liable for a principal balance well over $700,000.00. This court cannot determine upon which note, whether the Original Note or Renewal Note, D.A.N. is proceeding.
Additionally, there is an issue of material fact as to the amount in which the Salinardis are in default. Based on the complaint and the Adams affidavit, D.A.N. appears to be acting on the Original Note, which has a principal balance of $350,000.00. Compl., ¶ 1. D.A.N.'s counsel also agreed with the court at oral argument that it was seeking "a judgment as to liability for three hundred fifty thousand plus interest." Tr., 3/15/99, p. 7. D.A.N. in its complaint claims, however, that the Salinardis are in default of the note and mortgage; Compl., ¶ 8; with the present unpaid principal balance due under the Note. [of] $397,547.37." Compl., ¶ 9. The existence of the Renewal Note, which recites a principal balance greater than that in either the complaint or in the Original Note, further adds to the court's inability to determine as a matter of law the amount for which the Salinardis are liable.
For the foregoing reasons, the motion for summary judgment is denied.
Clarance J. Jones Judge of the Superior Court