[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#148)
On August 29, 1998, the plaintiffs, Marie and Michelle Crockwell, were involved in an automobile accident with Alvaro Baron, who was driving a commercial truck owned by Southeast Auto Transport d/b/a E.R. Trucking. Although the collision occurred in Old Saybrook, the plaintiffs are residents of New York.
The defendant, Government Employees Insurance Company (GEICO), insured the plaintiffs' vehicle at the time of the accident. The plaintiffs allege that the defendant failed to provide them with underinsured motorist and medical payment coverage.
On July 6, 1999, the plaintiffs filed suit against GEICO. GEICO filed its motion for summary judgment on March 23, 2001. The defendant requests judgment on all "counts against it.
 I
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and CT Page 13915 that the moving party is entitled to judgment as a matter of law. . . .Miller v. United Technologies Corp., 233 Conn. 732, 744-45, 660 A.2d 810
(1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434,429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46]." Raynor v. Hickock RealtyCorp., 61 Conn. App. 234, 237, 763 A.2d 54 (2000). "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." United Services Automobile Assn. v. Marburg,46 Conn. App. 99, 110, 698 A.2d 914 (1997). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) River Dock Pile, Inc. v. Insurance Co., NorthAmerica, 57 Conn. App. 227, 231, 747 A.2d 1060 (2000).
 II
As a threshold matter, this court must decide whether Connecticut law or New York law applies to the insurance policy. The defendant contends that New York law must apply to the whole complaint while the plaintiffs contend that Connecticut has the superior interest and, therefore, Connecticut law applies to the whole complaint.
The complaint makes out several allegations sounding in either tort or in contract. For each type of claim, the analysis differs and this court shall treat the contract issues separately from the tort issues.
 A
The complaint's second and eighth counts allege that the defendant owes Marie and Michelle Crockwell, respectively, underinsured coverage benefits. The third and ninth counts allege that the defendant has breached its contract with the plaintiffs by withholding medical expense payments from Marie and Michelle Crockwell, respectively. In its motion, the defendant contends that it did not breach its contract with the plaintiffs because they did not comply with the policy when they gave the defendant notice later than ninety days after the accident.
In Connecticut, when the insured fails to give timely notice according to the provisions of the policy, the insured must prove that the insurer was not materially prejudiced because a notice provision is not considered a material part of the contract. Aetna Casualty Surety Co.CT Page 13916v. Murphy, 206 Conn. 409, 417-18, 538 A.2d 219 (1988). In New York, failure to give timely notice according to the policy precludes recovery under breach of contract because notice provisions are considered a condition precedent. Matter of Progressive Ins. Co., 236 App.Div.2d 672,673, 653 N.Y.S.2d 193 (1997). Because a conflict of law exists between Connecticut and New York contract law, the court shall undertake the analysis as set forth in Reichhold Chemicals, Inc. v. Hartford Accidentand Indemnity, 243 Conn. 401, 703 A.2d 1132 (1997). Bellavita v. AllstateIns. Co., Superior Court, judicial district of Fairfield, Docket No. 327000 (August 12, 1999, Melville, J.) ("In determining the governing law, a forum applies its own conflict-of-law rules.")
"[U]nless another state has an overriding policy-based interest in the application of its law, the law of the state in which the bulk of the contracting transactions took place should be applied." ReichholdChemicals, Inc. v. Hartford Accident and Indemnity, supra, 243 Conn. 414
(Citing and summarizing 1 Restatement (Second), Conflict of Laws § 188, p. 575 (1971)). Section 188 of the Restatement (Second) of Conflict of Laws states that "[i]n the absence of an effective choice of law by the parties . . . the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to the issue include:
"(a) the place of contracting,
"(b) the place of negotiation of the contract,
"(c) the place of performance,
"(d) the location of the subject matter of the contract, and
"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Being a contract for insurance, § 193 of the Restatement (Second) is also implicated. "The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles in § 6 to the transaction and the parties, in which event the local law of the other state will be applied." Accordingly, the court shall consider these contacts before considering the § 6 principles.
 1
The first contact is the place of contracting. "Standing alone, the CT Page 13917 place of contracting is a relatively insignificant contact," however, it "rarely stands alone and, almost invariably, is but one of several contacts in the state." 1 Restatement (Second), supra, § 188, comment (e).
The court has scoured the documents provided by the defendant. It has not found, however, anything demonstrating the place of contracting. Accordingly, this court makes no finding regarding the place of contracting.
 2
The second contact is the place of negotiation of the contract. The Restatement makes this contact a "significant contact." Id. Again, the defendant has not supplied the court with any documentation on the place of negotiation of the contract. Accordingly, the court cannot consider this contact.
 3
The third contact is the place of performance. The comments to the Restatement state that "[i]t is clear that the local law of the place of performance will be applied to govern all questions relating to details of performance."
The documentation provided by the defendant fails to relate where the place of performance was. Accordingly, the court can make no finding on where the place of performance would be.
 4
The fourth contact is the location of the subject matter of the contract. In the comments of § 188, it provides that "[w]hen the contract deals with a specific physical "thing, such as land or a chattel . . . the location of the thing or of the risk is significant. . . . The state where the thing or the risk is located will have a natural interest in transactions affecting it. Also the parties will regard the location of the thing or the risk as important. Indeed, when the thing or the risk is the principal subject of the contract, it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the thing or risk was located would be applied to determine many of the issues arising under the contract."
This contact also ties in with the location of the insured risk, as discussed in § 193 of the Restatement (Second). The comments to CT Page 13918 § 193 provide that "[a]n insured risk, namely the object or activity which is the subject matter of the insurance, has its principal location, in the sense here used, in the state where it will be during at least the major portion of the insurance period. . . . [I]n the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question." 1 Restatement (Second), supra, § 193, comment (b). "The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law. . . ." Id.
Attached to the defendant's motion for summary judgment is the accident report filed by an Old Saybrook police officer.[1] Within the report, the officer noted that the insured vehicle was registered in New York. Moreover, the driver of the vehicle, Marie Crockwell, was licensed to drive in New York. Both she and Michelle Crockwell have also admitted in interrogatories attached to the motion that they reside in New York.
The policy also demonstrates where the contracting parties believed the risk would be located.[2] The policy makes several references to New York insurance and workers' compensation law. The policy also provides that "[a]ny terms of this policy in conflict with the statutes of New York are amended to conform to those statutes." Moreover, the policy states that "[w]hen the policy applies to the operation of a motor vehicle outside of your state, we agree to increase your coverages to the extent required by out-of-state motorists by local law . . ." The out-of-state provision, using the words your state" indicates that the risk would be located in New York except for a few minor instances. Accordingly, the policy itself demonstrates that the risk would be located principally in New York.
The plaintiffs have failed to provide any documentation to sufficiently rebut the defendant's exhibits. Accordingly, this court finds that the location of the subject matter of the policy and the principal location of the insured risk is New York.
 5
The final contact is the domicile and place of business of the parties. The significance of this contact "depends largely upon the issue involved and upon the extent to which they are grouped with other contacts." 1 Restatement (Second), supra, § 188, comment (e).
The defendant has offered no documentation and has not asked for judicial notice regarding where it does business. Because of this failure, the court will not make a finding regarding the defendant's CT Page 13919 place of business.
As for the plaintiffs, however, the court has documentation, in the form of interrogatories, that each are residents of New York. Accordingly, this court finds that the plaintiffs are domiciled in New York.
 B
Having determined the location of the risk and the situs of the insured property, the court must now consider whether Connecticut or New York has the greater interest in how the contract is interpreted. To do so, the court must look to § 6 of the Restatement (Second.)
Section 6 provides seven principles to decide which law to apply. The court shall consider them in turn, considering them against the contacts demonstrated by the defendant.
 1
The first principle is "the needs of the interstate and international systems. . . ." 1 Restatement (Second), supra, § 6(a). This principle attempts to harmonize relations between states in order to facilitate interstate commerce.
The needs of the interstate system point to applying New York law. Because the plaintiff-insureds are from New York and because the location of the insured property was New York, it would be presumptuous for Connecticut to apply its contract law to the policy just because the insureds happened to have an automobile accident within Connecticut.
 2
The second and third principles are the policies of the forum state, Connecticut, and any other interested state, respectively. "In general, it is fitting that the state whose interests are most deeply affected should have its local law applied." 1 Restatement (Second), supra, § 6, comment (f).
Because the plaintiffs have chosen Connecticut as their forum, Connecticut has an interest. Connecticut law, as discussed in Part II A, finds that a notice provision in an insurance contract is not a material term. Connecticut has done so because "loss of coverage must be weighed against an insurer's legitimate interest in protection from stale claims." Aetna Casualty Surety Co. v. Murphy, supra, 206 Conn. 417. Weighing those considerations, Connecticut has determined that an insurer CT Page 13920 must be prejudiced by any delay.
A state's interest in disallowing coverage when notice is not timely is also discussed in Aetna Casualty Surety Co. v. Murphy. "The purpose of a policy provision requiring the insured to give the company prompt notice of an accident or claim is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. . . . And further, if the insurer is thus given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation." (Internal quotation marks omitted.) Id., 417. New York's law is supported by this policy.
Given that all the demonstrated contacts are in New York, New York has the more dominant interest in having its law applied. The location of the insured automobile is New York, as is the location of the plaintiffs' domiciles. New York's policy of protecting insurance companies from stale claims would be weakened if Connecticut law applied to a case where all contacts are located in New York. Moreover, Connecticut has no reason to apply its contract law except an automobile accident occurred in Connecticut and the plaintiffs chose Connecticut as the forum for their lawsuit. Accordingly, New York has the greater interest in applying its contract law to this case.
 3
The fourth principle is "the protection of justified expectations." I Restatement (Second), supra, § 6(d). "This is an important value in all fields of law. . . . Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." Id., comment (g).
In the present case, this principle points to application of New York law. It is clear from the contacts and the numerous references to New York law within the policy that the contracting parties expected New York law to apply.[3] To apply Connecticut law to the policy would be unfair and improper.
 4
The fifth principle is concerned with the underlying principles in the particular field of law. "This factor is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules." 1 Restatement (Second), supra, § 6, CT Page 13921 comment (h).
This principle is irrelevant. The underlying policies of contract law would not be violated by application of Connecticut or New York law.
 5
The sixth factor is certainty, predictability and uniformity of the result. This factor is used to discourage forum shopping, but the Restatement warns that this can "be purchased at too great a price." 1 Restatement (Second), supra, § 6, comment (i). In the case of contract law, however, parties may have considered which law they wished to apply.
In the present case, this principle is important. It is apparent from the domicile of the plaintiffs and the references in the policy that applying New York law would lend itself to certainty, predictability and uniformity of result. Moreover, with the insured property located in New York, applying New York law would allow insureds and insurers to predict that New York law would control.
 6
The last principle, ease in the determination and application of the law to be applied, carries the least importance. The restatement's comments warn that "[t]his policy should not be overemphasized. . . ." 1 Restatement (Second), supra, § 6, comment (j).
Not only does this principle not have much import, but in the present case, New York law is easy to apply. Accordingly, the court does not give this principle much weight.
 C
By considering the principles and contacts, the court finds that New York law should apply for the reasons stated above. In order to decide the motion for summary judgment, however, the court must determine whether the defendant has demonstrated that the plaintiffs have failed to meet the notice requirement and, therefore, are not owed underinsured and medical expenses coverage.
The copy of the policy provided to the court has a notice provision in the amendments and endorsements section.[4] In the section entitled "conditions" the notice provision provides that "[i]n the event of an accident, written notice setting forth details sufficient to identify the eligible injured person along with reasonably obtainable information CT Page 13922 regarding the time, place and circumstances of the accident, shall be given by, or on behalf of, each eligible injured person, to the Company . . . as soon as reasonably practicable, but in no event more than 90days after the date of the accident, unless the eligible injured person submits written proof that it was impossible to comply with such time limitation due to specific circumstances beyond such person's control." (Emphasis added.)
Attached to the motion for summary judgment are two sets of admissions, each addressed to the separate plaintiff. Both admissions state: "[The plaintiff] did not provide GEICO with written notice that she was injured in the accident within ninety (90) days of the accident." In the response portion, each plaintiff admits: "True; however, the plaintiff denies that she was required to do so as Connecticut law would apply." A legal conclusion made by a party or witness does not constitute an admission. See, e.g., Tianti ex rel. Gluck v. WilliamRaveis Real Estate, Inc., 231 Conn. 690, 695 n. 7, 651 A.2d 1286 (1995). The plaintiffs have admitted, however, that their notice was given after the ninety-day period.
The plaintiffs have breached a condition precedent under New York law. "[I]t is settled law in New York that [a]bsent a valid excuse, a failure to satisfy the notice requirement vitiates the policy. . . ." (Internal quotation marks omitted.) American Home Assurance Co. v. InternationalIns. Co., 90 N.Y.2d 433, 440, 661 N.Y.S.2d 584, 684 N.E.2d 14 (1997). The plaintiffs have not submitted any documentation to support that they had a valid excuse. Accordingly, no genuine issue of material fact exists as to whether the defendant breached the contract and owes the plaintiffs underinsured and medical payment benefits.
 III
The defendant argues that New York law applies to the plaintiffs' tort claims, Because Connecticut recognizes the practice of depecage; seeReichhold Chemicals v. Hartford Accident Indemnity, 252 Conn. 774,783, 750 A.2d 1051 (2000); this court would normally need to conduct a separate analysis to determine whether to apply Connecticut's or New York's tort laws. This court finds, however, that because the defendant did not improperly fail to cover the plaintiffs, the tort claims against the defendant have not been properly alleged, whether under Connecticut or New York law.
 A
The fourth and eleventh counts allege that the defendant breached its duty of good faith and fair dealing as to Marie and Michelle Crockwell, CT Page 13923 respectively. Those counts incorporate the facts of the breach of contract claims and further allege that "[t]he defendant . . . by refusing to pay the amount demanded by the plaintiff . . . has breached an implied covenant of good faith and fair dealing, contrary to its obligation to deal with the plaintiff . . . in a fair reasonable manner." As demonstrated in Part II C, the defendant properly refused to cover the plaintiffs.
"The common-law duty of good faith and fair dealing implicit in every contract requires that neither party [will] do anything that will injure the right of the other to receive the benefits of the agreement. . . . Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." (Internal quotation marks omitted.) Elm Street Builders v.Enterprise Park Condominium, 63 Conn. App. 657, 665, 778 A.2d 237
(2001). The parties entered into a contract that allowed the defendant to deny coverage if the insureds failed to give written notice within ninety days after an accident. The plaintiffs do not deny that they failed to give notice and, therefore, they received their reasonable expectation under the contract, that is, no coverage. Accordingly, there is no genuine issue of material fact as to whether the defendant breached its duty of good faith and fair dealing.
 B
The complaint's fifth and twelfth counts allege a violation of General Statutes § 38a-816, a provision of CUIPA. The defendant makes three arguments, asserting that it deserves summary judgment on the fifth and twelfth counts of the complaint. First, it argues that because New York law applies to the tort claims, CUIPA cannot be applied to the plaintiffs. Second, the defendant argues that CUIPA does not, in any event, provide a private cause of action. Third, the defendant contends that the complaint itself is deficient. Because the court agrees that the complaint is deficient, the court need not reach the other two issues raised by the defendant.
Section 38a-816 describes all the acts that constitute a violation of CUIPA. While the plaintiffs do not narrow their complaint to the specific subsection that the defendant allegedly violated, the complaint does provide that the defendant misrepresented the benefits payable and that this was the defendant's general business practice. Such an allegation implicates § 38a-816 (1) which provides that "[m]aking, issuing or circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement, sales presentation, omission or comparison which . . . [m]isrepresents the benefits, advantages, conditions or terms of any insurance policy" is "an unfair insurance CT Page 13924 practice.
The defendant has demonstrated, however, that it has not misrepresented coverage. It has, in fact, provided the coverage that was reasonable when an insured, under New York law, does not comply with the notice provision. Accordingly, no genuine issue of material fact exists as to whether the defendant violated CUIPA.
 C
The seventh and thirteenth counts allege a violation of the Connecticut Unfair Trade Practices Act (CUIPA) as to Marie and Michele Crockwell, respectively. The CUTPA counts re-allege the allegations contained within the breach of contract counts and concludes that "[t]he defendant . . . has acted in violation of [CUTPA] by engaging in the unfair acts or practices as aforesaid in the conduct of its business"
The defendant argues that the complaint is deficient because it merely alleges a breach of contract that does not rise to the level of a CUTPA violation. "[T]o recover under CUTPA for a simple breach of contract, the plaintiff must show substantial aggravating circumstances intending to breach." (Internal quotation marks omitted.) Thames River Recycling v.Gallo, 50 Conn. App. 767, 784, 720 A.2d 242 (1998). The defendant has already demonstrated that it did not commit the allegedly deceptive act, denying coverage improperly. Even if it had not, the complaint is deficient because it merely alleges a breach of contract but does not allege any aggravating circumstances. Accordingly, this court finds that no genuine issue of material fact exists as to whether the defendant has violated CUTPA.
 D
The seventh and fourteenth counts allege reckless infliction of emotional distress as to Marie and Michele Crockwell, respectively. The defendant again argues that the complaint is legally insufficient, though it argues that New York law should apply. Even if Connecticut law were to apply, as the plaintiffs maintain, the complaint is still legally insufficient.
"To determine whether the plaintiffs' . . . complaint states a cause of action sounding in recklessness, we look first to the definitions of wilful, wanton and reckless behavior. Recklessness is a state of consciousness with reference to the consequences of one's acts. . . . It is more than negligence, more than gross negligence. . . . The state of amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a CT Page 13925 reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." (Citations omitted; internal quotation marks omitted.) Craig v. Driscoll, 64 Conn. App. 699,720, ___ A.2d ___ (2001). The plaintiffs' reckless infliction allegations merely allege a breach of contract that they conclude amounts to a violation of CUIPA and that, therefore, this is reckless conduct. As discussed above, the defendant has demonstrated that it did not violate its contract and that even if it had, the plaintiffs failed to allege that the defendant violated CUIPA or CUTPA. Accordingly, the defendant's conduct was not more egregious than gross negligence. Because the plaintiffs have failed to properly allege reckless conduct, no genuine issue of material fact exists as to whether the defendant committed a reckless infliction of emotional distress.
 IV
For the reasons herein stated, the court grants the defendant's motion for summary judgment as to the second, third, fourth, fifth, sixth, seventh, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth counts of the revised complaint.
It is so ordered.
By the court
GILARDI, J.