[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action comes before the court on a motion for summary judgment filed by the plaintiff. The plaintiff, Atlantic Mutual Insurance Company (Atlantic), brought a declaratory judgment suit against the defendants, the Reverend Arthur Pope (Pope) and the First Church of Christ (church), in order to determine whether it owes a duty to defend and a duty to indemnify the defendant Pope, a pastor at the church, in the action, Doev. First Church of Christ, Superior Court, judicial district of New London, Docket No. 97-0543659 S.[1] Atlantic is potentially obligated to the defendant Pope under the terms of Insurance Policies for Churches, which Atlantic issued to the defendant church, effective during the period at issue.[2] The plaintiff moves for summary judgment on the ground that the conduct of the defendant Pope, as alleged in the underlying civil suit, is excluded by both the coverage terms of the general liability policy form and the exclusions of the pastoral professional liability form due to the defendant's alleged actions of introducing sexual acts and beatings into pastoral counseling sessions he had with the minor parishioner Doe.
On January 3, 2000, the plaintiff filed a motion for summary judgment (#106) on its amended complaint. The plaintiff also filed a supporting memorandum of law, copies of the relevant insurance policies and the underlying complaint.[3] The defendant filed an opposing memorandum of law with documentary evidence[4] on May 3, 2000.[5] The court heard oral argument at short calendar on May 22, 2000, and now issues this memorandum of decision.
 DISCUSSION
"Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any CT Page 8812-c other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.)Rivera v. Double A Transportation, Inc., 248 Conn. 21, 24, 727 A.2d 204
(1999).
"The court may address the merits of a declaratory judgment action upon a motion for summary judgment." American Home Assurance Co. v. StamfordPropane, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 149399 (March 7, 1997, D'Andrea, J.). "An action for declaratory judgment is a special proceeding." Wilson v. Kelley,224 Conn. 110, 121, 617 A.2d 433 (1992). "The purpose of a declaratory judgment action is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties." (Internal quotation marks omitted.) St.Paul Fire and Marine Ins. Co. v. Shernow, 22 Conn. App. 377, 380-81,577 A.2d 1093 (1990), aff'd, 222 Conn. 823, 610 A.2d 1281 (1992). "There is no question that a declaratory judgment is a suitable vehicle to test the rights and liabilities under an insurance policy." Id., 380. Declaratory judgment actions have been used to determine whether an insurer has a duty to defend and indemnify its insured. See Holy TrinityChurch of God in Christ v. Aetna Casualty Surety Co., 214 Conn. 216,571 A.2d 107 (1990).
 FACTS
The following facts are undisputed. From January 1, 1988 until January 1, 1993,[6] the plaintiff insured First Church of Christ pursuant to the terms of the general liability coverage and pastoral professional liability form contained therein.[7] In September 1997, the minor plaintiff, known only as James Doe, filed a civil action in the judicial district of New London against the First Church of Christ and Pope[8]
alleging negligence and negligent infliction of emotional distress, respectively.[9] Doe claims that in early 1988, when he was fifteen years of age, he began religious counseling with the defendant, a minister employed by the First Church of Christ and assigned to the First Church in Groton, Connecticut. Doe alleges that beginning in late CT Page 8812-d February of 1998, and continuing until August of 1990. the defendant introduced sexual acts[10] into their pastoral counseling sessions, which were represented to be religious communion with Jesus Christ. Doe also alleges that the defendant often beat and whipped his naked buttocks and back during these sessions and that the sessions were usually held at the church parsonage, the office of the church and less frequently at other locations.
 I DUTY TO DEFEND
A. General Liability Coverage Policy
The plaintiff moves for summary judgment on the ground that it does not have a duty to defend the defendant in the underlying civil action under the terms of the general liability policy.[11]
"[I]t is well settled that an insurer s duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the underlying complaint. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability." (Citation omitted; internal quotation marks omitted.) Springdale Donuts, Inc. v. Aetna Casualty and Surety Co.of Illinois, 247 Conn. 801, 807, 724 A.2d 1117 (1999). "[I]f an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Emphasis in original; internal quotation marks omitted.) Imperial Casualty and IndemnityCompany v. State, 246 Conn. 313, 323-324, 714 A.2d 1250 (1998).
"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." Schultz v. Hartford Fire Ins. Co.,213 Conn. 696, 702, 569 A.2d 1131 (1990). Here, the terms of the first policy provide that the plaintiff has a duty to defend and indemnify for "all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . caused by anoccurrence. . . ." (Emphasis in original.) (Exhibit A, comprehensive liability-broad form, Part I, Coverage A, p. 1 CT Page 8812-e of 11.)[12]
The plaintiff argues that it owes no duty to defend the defendant because (1) the defendant does not constitute an "insured;" (2) the underlying plaintiff did not suffer "bodily injury;" (3) the repeated sexual acts of the defendant did not constitute an "occurrence;" and (4) the defendant's actions were "expected or intended from the standpoint of the insured." Each argument will be examined separately.
1. The defendant is an "insured".
The plaintiff argues that the defendant was not acting within the scope of his employment at the time of the alleged acts and, therefore, is not an insured as defined by the policy. The defendant argues in opposition that he was acting within the scope of his employment at the times of the alleged misconduct. In addition, the defendant argues that determining whether his conduct was within the scope of his employment is a question of fact, not law, and, therefore, is inappropriate for summary adjudication.
The first policy defines "insured" as "any employee (other than officers) of the [First Church of Christ] . . . while acting within thescope of his duties as such. . . ." (Emphasis added.) (Exhibit A, comprehensive liability-broad form, Part II, Persons Insured, ¶ B, p. 2-3 of 11.)[13]
"In most cases, it is the function of the jurors to determine from the facts before them whether . . . a servant was acting within the scope of his employment. . . . In some situations, however, the acts of the servant are so clearly without the scope of his authority that the question is one of law." (Citation omitted; internal quotation marks omitted.) Brown v. Housing Authority, 23 Conn. App. 624, 628, 583 A.2d 643
(1990), cert. denied, 217 Conn. 808, 585 A.2d 1233 (1991). "[T]he vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business. . . . Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable." (Citation omitted; internal quotations omitted.) A-G Foods, Inc. v. PepperidgeFarm, Inc., 216 Conn. 200, 210, 579 A.2d 69 (1990).
A comparison of the factual allegations of the underlying complaint with the coverage provided by the insurance policy reveals the following. In the underlying complaint, the under lying plaintiff alleges CT Page 8812-f that as a parishioner of First Church of Christ, he sought counseling from the defendant as a pastoral counselor; (Exhibit B, third revised complaint, count one, ¶¶ 3, 7); and they began a counseling relationship meeting several times a week. (Exhibit B, count one, ¶ 8.) "Said counseling involved religious guidance, Bible readings, teachings about Jesus Christ, and the sacrament of communion in the form of bread and wine." (Exhibit B, count one, ¶ 9.) The underlying plaintiff then specifically alleges it was during pastoral counseling that the defendant introduced sexual acts, which were represented to the underlying plaintiff to be a religious communion with Jesus Christ. (Exhibit B, count one, ¶ 11.) Further, the alleged sexual acts were often accompanied by the defendant beating and whipping the minor plaintiff's naked buttocks and back. (Exhibit B, count one, ¶ 12.) This conduct is alleged to have mostly taken place at the office of the church and in the church itself, along with other places. (Exhibit B, count one, ¶ 12.)
In Mullen v. Horton, 46 Conn. App. 759, 700 A.2d 1377 (1997), a priest, who was also a psychologist, began a sexual relationship with a woman who received counseling from him both at his church office and at his office in a therapy center. There, the court held that "the trier of fact could reasonably have found that Horton's sexual relations with the plaintiff during their pastoral-psychological counseling sessions were a `misguided effort' at psychologically and spiritually counseling the plaintiff, rather than an abandonment of the counseling." Id., 767. Here, the defendant is a pastor, and the pleadings, including the underlying complaint, fail to allege that he, like a priest, has an express prohibition from engaging in sexual activity. While the defendant is not a psychologist, the underlying complaint alleges that he is "to provide pastoral care and counseling . . . as part of his employment duties." (Exhibit B, count one, ¶ 5.)
In sum, the underlying complaint alleges that the defendant's acts occurred as part of the pastoral counseling sessions and were represented as furthering the underlying plaintiff's religious experience. Accordingly, the court finds that the acts as alleged, however misguided, are not so clearly outside the defendant's scope of employment that the question is one of law. Therefore, the court finds it is a question of fact for a jury to decide whether the defendant was acting within the scope of his employment. For the purposes of this motion, the allegations of the underlying complaint fall within the terms of coverage.
2. The defendant's acts do not constitute "bodily injury". CT Page 8812-g
The plaintiff argues that absent allegations of physical manifestation, the allegations of negligent infliction of emotional distress in the underlying complaint do not constitute "bodily harm" as defined in the terms of the policy. In opposition, the defendant argues that the underlying complaint alleges sufficient physical manifestation to constitute bodily injury.
The first policy defines "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." (Exhibit A, comprehensive liability-broad form, Part VI, Glossary, p. 9 of 11.)[14]
"Emotional distress, absent any physical manifestation, does not constitute `bodily harm, sickness or disease' in their plain and ordinary meanings." Moore v. Continental Casualty Co., 52 Conn. App. 287, 290,725 A.2d 994 (1999), aff'd, 252 Conn. 405, 746 A.2d 1252 (2000). "Bodily injury requires some physical harm." Id. Our Supreme Court clarified that headaches, stomachaches, nausea and emotional disorders will not constitute "bodily injury" where the insurance policy defines "bodily injury" as "bodily injury, sickness or disease," and the policy has a separate section addressing personal injuries of a nonbodily or noncorporal nature and emotional distress is not enumerated therein. SeeMoore v. Continental Casualty Co., 252 Conn. 405, 411-13, 746 A.2d 1252
(2000) (Court stated it was not persuaded by decisions of courts of other jurisdictions reaching contrary conclusions) citing Voorhees v. PreferredMutual Ins. Co., 128 N.J. 165, 179, 607 A.2d 1255 (1992) (emotional distress deemed within term bodily injury because accompanied by physical symptoms of nausea, stomach pain and headaches).
The defendant argues that Moore is not controlling because in that case economic loss (fraud) was the basis for the allegations of emotional injury as opposed to the professional malpractice alleged in this case. The court fails to find the defendant's argument availing. Here, the underlying complaint alleges that the minor plaintiff suffered headaches, post traumatic stress disorder, sleep disturbances and concentration problems, among other nonphysical complaints. (Exhibit B, third revised complaint, count one, ¶ 16; count two, ¶ 14.) The policies provide three types of personal liability coverage. The first, for "personal injury" involves noncorporeal torts, such as defamation and invasion of privacy, but does not include the tort of negligent infliction of emotional distress. The second, for "bodily injury" uses the term "bodily" to describe the type of injury covered, and the third, for "property damage" uses the term "physical" to describe the type of CT Page 8812-h property damage covered. See Moore v. Continental Casualty Co., supra,252 Conn. 411.
Ordinarily, allegations of beatings and whippings; (Exhibit B, third revised complaint, count one, ¶ 12); carry an inference of resulting bodily injury. Here, the underlying complaint fails to allege any resulting physical injuries and instead alleges only emotional distress injuries. (Exhibit B, third revised complaint, count one, ¶ 16; count two, ¶ 14.) Accordingly, the underlying complaint fails to allege sufficient physical manifestation to constitute "bodily injury" and thereby fall within the terms of coverage.
3. The defendant's acts were "expected or intended from the standpoint of the insured".
The plaintiff also alleges that the defendant's actions were "expected or intended from the standpoint of the insured," thereby falling within the "bodily injury" exclusion to coverage.
In the first policy, this exclusion is part of the definition of "occurrence." "`[O]ccurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury . . .neither expected nor intended from the standpoint of the insured." (Emphasis added.) (Exhibit A, comprehensive liability-broad form, Part VI, Glossary, p. 11 of 11.)[15] The court need not address the merits of this argument because the court finds the underlying complaint fails to allege sufficient physical manifestation to meet the definition of "bodily injury."
4. The defendant's acts are not an "occurrence".
The plaintiff argues that the defendant's acts as alleged in the underlying complaint were intentional and, therefore, do not constitute an "occurrence" as defined in the terms of the policy. In opposition, the defendant argues that the definition of "occurrence" creates ambiguity and goes back to a question of intent that should be left for the jury. Also, the defendant argues that he lacked intent to act criminally, assaultively or sexually because of a mental defect or disorder, as asserted in his first special defense.
The first policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodilyinjury. . . ." (Emphasis added.) (Exhibit A, comprehensive liability-broad form, Part VI, Glossary, p. 11 of 11.) The policy does CT Page 8812-i not, however, define the term "accident."
"[P]olicy words must be accorded their ordinary and natural meaning. . . . [A]ny ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous." (Citations omitted.) Hansen v. Ohio Casualty Ins. Co.,239 Conn. 537, 542-43, 687 A.2d 1262 (1996).
In the present case, there is no ambiguity in the first policy. To constitute an "occurrence," there must be "bodily injury." As discussed previously, the court finds there were insufficient allegations of physical manifestation in the underlying complaint to meet our Supreme Court's definition of "bodily injury." Accordingly, the court finds that under the terms of the first policy, the underlying complaint fails to allege "occurrence" and, therefore, the defendant's acts fall outside the terms of coverage.
The two subsequent policies, however, define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Exhibit A, general liability coverage form, Section V — Definitions, ¶ 9, p. 9 of 9.) Similarly, these policies do not define the term "accident."[16]
The defendant argues the definition of "accident" as an "unintended occurrence"; Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573,590, 573 A.2d 699 (1990); is circular and ambiguous and, therefore, the court should find in favor of the insured. See Hansen v. Ohio CasualtyIns. Co., supra, 239 Conn. 542-43. Additionally, the defendant argues that the definition of "accident" in the Hammer case goes to a question of intent and as such should go to the jury.[17]
Our Supreme Court has stated that the "term `accident' is to be construed in its ordinary meaning of an `unexpected happening.'"Commercial Contractors Corp. v. American Ins. Co., 152 Conn. 31. 42,202 A.2d 498 (1964). An "accident" is "a sudden event or change occurring without intent or volition through carelessness, an unfortunate result."Nationwide Mutual v. Mazur, Superior Court, judicial district of New Britain, Docket No. 489231 (June 3, 1999, Robinson, J.).
The court finds the policy terms are not ambiguous, and that other case law defines "accident" without using the word "occurrence"; seeCommercial Contractors Corp. v. American Ins. Co., supra, 152 Conn. 42; CT Page 8812-j and, therefore, provides a definition of "accident" that is not circular. Our Supreme Court has stated that the "term `accident' is to be construed in its ordinary meaning of an `unexpected happening.'" Id. Thus, the court finds the mention of "intent" in the case law definition of "accident" as "a sudden event or change occurring without intent orvolition through carelessness, an unfortunate result"; (Emphasis added)Nationwide Mutual v. Mazur, supra, Superior Court, Docket No. 489231; goes more to the lack of deliberateness or negligent conduct of the act itself, not the intent of the acting party to achieve a certain end result.
Even assuming arguendo that the definition of "accident" goes back to a question of intent, the defendant fails to provide a sufficient evidentiary foundation to create a genuine issue of material fact as to his intent.
The defendant submitted his own affidavit dated May 5, 2000, claiming that he did not intend to injure the minor plaintiff. The court finds this affidavit self-serving. "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." 2830 Whitney Avenue v. Heritage Canal Development Associates,33 Conn. App. 563, 567, 636 A.2d 1377 (1994).
The defendant also argues that he suffered from a psychiatric condition known as "mixed sexual disorder," as claimed in his first special defense. He argues that because of this disorder, he did not understand the nature or wrongfulness of his conduct or was deprived of the capacity to control his actions regardless of his understanding of the nature or wrongfulness of his actions and, therefore, did not have the requisite intent.
The defendant's first special defense is not competent evidence to support an opposition to a motion for summary judgment. "It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court in support of a motion for summary judgment." (Internal quotation marks omitted.) United Services AutomobileAssn. v. Marburg, supra, 46 Conn. App. 110. "While the court must view the evidence in the light most favorable to the nonmoving party when deciding a motion for summary judgment, the court cannot consider factual claims that are unsupported by affidavit or other reliable evidence."Middlesex Mutual Assurance Co. v. Hitchcock, Superior Court, judicial district of New Haven at New Haven, Docket No. 431600 (March 8, 2000, CT Page 8812-kAlander, J.); see also Practice Book § 17-45 (supporting documents to a motion for summary judgment must be made under oath or be otherwise reliable).
The defendant fails to provide an affidavit from a medical professional or any evidence providing a definite diagnosis of his psychiatric condition in the relevant time frame, stating facts or opinions from which it might reasonably be inferred that because of that condition the defendant was incapable of controlling his conduct towards the underlying plaintiff or of forming an intent to cause him injury. See United ServicesAutomobile Assn. v. Marburg, supra, 46 Conn. App. 108 (affidavit by defendant's treating psychiatric physician held insufficient to support finding of lack of intent even though it provided a definite diagnosis in the relevant time frame because it failed to provide these details). Also, the defendant fails to provide a functional description of the diagnosis "mixed sexual disorder" or any evidence stating why he was diagnosed as suffering from this disorder or of any symptoms he experienced. See id. Accordingly, the defendant fails to sustain his burden of providing an evidentiary foundation to demonstrate that a genuine issue of material fact exists regarding his lack of intent.
The court finds that the defendant's actions as defined in the second count of the underlying complaint do not as a matter of law constitute an "occurrence," as that term is defined under the two subsequent policies. Analysis of the facts pleaded in the underlying complaint reveal the following. The underlying complaint alleges that the sexual conduct and beatings occurred at various locations over a period of approximately two and one half years and that such conduct caused the underlying plaintiff damages, albeit damages that do not meet the policy's definition of "bodily injury." Therefore, for the purposes of this motion, the court finds that allegations of the underlying complaint fail to allege "occurrence" meaning an "accident," defined as an "unexpected occurrence." Accordingly, the defendant's actions fall outside the terms of coverage.
B. Pastoral Professional Liability Policy
The plaintiff moves for summary judgment on the ground that it does not have a duty to defend the defendant in the underlying civil action because the allegations in the underlying complaint fall within the exclusions to the pastoral professional liability form.
In opposition, the defendant argues that his first special defense of a mental defect or disorder negates all of the exclusions because the CT Page 8812-l exclusions concern acts requiring intent.
The pastoral professional liability form in each of the applicable policies issued between 1988 and 1991 provides indemnification "of the insured arising out of the performance of professional services for others in the insured's capacity as a pastoral counselor." (Exhibit A, pastoral professional liability form, Insuring Agreements, ¶ A Coverage, p. 1 of 3.)[18] The first policy states that the plaintiff agrees "[t]o pay on behalf of the insured all sums which the insured becomes legally obligated to pay as damages because of any act or omission of the insured. . . ." (Exhibit A, pastoral professional liability form, Insuring Agreements, ¶ A Coverage, p. 1 of 3.) The two later policies provide that: "[Atlantic] will pay damages the insured becomes legally obligated to pay resulting from any `claim' made against the insured because of any negligent act, error or omission. . . ." (Emphasis added.) (Exhibit A, pastoral professional liability form, Section I — Coverage, ¶ 1.a., p. 1 of 2.)[19] The pastoral professional liability form expressly states that "[t]his insurance does not apply: A. to any dishonest, fraudulent, criminal or malicious act or omission of any insured; . . . H. to licentious, immoral or sexual behavior intended to lead to or culminating in any sexual act; . . . I. to assault and battery by or at the direction of the insured except in the act of self-defense; . . ." (Exhibit A, pastoral professional liability form, Exclusions, p. 2-3 of 3.)[20]
The court need not examine the merits of the plaintiffs argument that the conduct of the defendant falls within the exclusions to the pastoral professional liability form because, as discussed in section A, the defendant offers only conclusory allegations without substantiating facts to establish the existence of a material fact regarding his intent. Accordingly, for the purposes of this motion, the defendant's acts as alleged in the underlying complaint fall within these exclusions.
 III DUTY TO INDEMNIFY
The plaintiff moves for summary judgment on its declaratory judgment complaint on the ground that it has no duty to indemnify the defendant Pope in the underlying action. Neither party directly addresses this issue.
The amendments to the Practice Book, effective January 1, 2000, regarding conditions for declaratory judgments, expressly provides the CT Page 8812-m court the ability to grant declaratory judgment provided the following conditions have been met: "(1) The party seeking the declaratory judgment has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to the party's rights or other jural relations; (2) There is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; and (3) In the event that there is another form ofproceeding that can provide the party seeking the declaratory judgmentimmediate redress, the court is of the opinion that such party should be allowed to proceed with the claim for declaratory judgment despite the existence of such alternate procedure." (Emphasis added.) Practice Book § 17-55.
Prior to the change in the Practice Book, several Superior Court decisions looked to General Statutes § 38a-321 to provide such an alternate procedure. See, e.g., Nationwide Mutual v. Mazur, supra, Superior Court, Docket No. 489231 (denying Nationwide's motion for summary judgment with respect to its potential duty to indemnify on the basis of General Statutes § 38a-321). Section 38a-321 sets forth a method of recovery by which an injured party may, after a judgment, recover damages from a tortfeasor's insurer who wrongfully dishonors coverage of the claim.
Atlantic has been defending Pope in the underlying case under a reservation of rights pending the outcome of this action. There is no judgment in the underlying case. As discussed previously, the court finds that the plaintiff does not have a duty to defend the defendant Pope in the underlying action. Therefore, the plaintiff is not wrongfully dishonoring coverage of the claim.
Also, the court finds that a declaratory judgment is a proceeding that provides the plaintiff with immediate redress on the issue of its duty to indemnify the defendant Pope. See Practice Book § 17-55(3). "The purpose of a declaratory judgment action . . . is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties . . . and to make certain that the declaration will conclusively settle the whole controversy." (Citations omitted; internal quotation marks omitted.) Mannweiler v. LaFlamme, 232 Conn. 27, 33, 653 A.2d 168 (1995). A "trial court is afforded wide discretion to render a declaratory judgment." Leoni v. Water Pollution Control Authority, 21 Conn. App. 77,83, 571 A.2d 153 (1990). Accordingly, the court grants the plaintiff's motion for summary judgment on its declaratory judgment action on the ground that it does not owe a duty to indemnify the defendant Pope in the CT Page 8812-n underlying action.
 CONCLUSION
Based on the foregoing, the court finds there is no genuine material fact at issue whether the plaintiff owes a duty to defend the defendant because analyzing the allegations of the underlying complaint with the terms of the policies, the underlying complaint fails to sufficiently allege "bodily injury" or "occurrence." The defendant's actions also fall outside of the coverage terms because the defendant fails to sufficiently allege a genuine issue of material fact regarding his intent. Accordingly, the plaintiff's motion for summary judgment on its complaint for declaratory judgment is hereby granted as to both its duty to defend and its duty to indemnify the defendant Pope.
BY THE COURT
Hon. Andre M. Kocay, J.