**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Richard K. SHERRILL, Elizabeth J. Vernier and Paul Vernier, Defendants.**

Civ. No. 82–30028.

United States District Court, E.D. Michigan, S.D.

June 30, 1983.

James L. Borin, Detroit, Mich., for plaintiff.

John C. McColl, Port Huron, Mich., for defendants Vernier.

Richard K. Sherrill, in pro per.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

Plaintiff brought this declaratory judgment action to determine a question of insurance coverage for a series of particularly outrageous acts committed by its insured, defendant Richard Sherrill against defendant Elizabeth Vernier. Defendant Sherrill is the named insured under a homeowner's policy issued by plaintiff that contains an exclusion for "bodily injury or property damage which is either expected or intended from the standpoint of the insured."

In an underlying civil action filed in St. Clair County Court, Mrs. Vernier seeks

damages from Sherrill based on his allegedly tortious conduct. Plaintiff is requesting a determination that the homeowner's policy does not cover the acts of Sherrill and therefore plaintiff has no duty to defend or indemnify him in the State court action. (Allstate has appeared on behalf of Sherrill in that action under a reservation of rights.)

This matter is presently before the Court on plaintiff's motion for summary judgment.

The facts surrounding the underlying controversy are not materially in dispute. On December 2, 1980, at approximately 1:30 a.m. Sherrill entered the convenience store where Mrs. Vernier was employed as a cashier. Armed with a pistol, Sherrill directed Mrs. Vernier to empty the cash register. He then abducted her at gunpoint and forced her into his automobile. While driving about the back roads of St. Clair County, Sherrill ordered Mrs. Vernier to undress and then tied her hands behind her back. Sherrill then drove to his home, took Mrs. Vernier inside and threatened to kill her if she made a sound. Sherrill then tied her to a bed and commenced a series of vile and atrocious sexual assaults. During the entire ordeal, Sherrill repeatedly threatened to murder Mrs. Vernier and "cut (her) up in pieces."

Sherrill ultimately released Mrs. Vernier and she was able to call the police. Sherrill was subsequently arrested and charged with armed robbery, kidnapping and first degree sexual conduct. He pled nolo contendere to armed robbery and was sentenced to a term of imprisonment of 6 to 20 years.

Sherrill claimed that he had ingested three pills or "hits" of mescaline (a hallucinogen), approximately a bottle and a half of schnapps, several bottles of beer and smoked two or three marijuana cigarettes or "joints" before entering the store on December 2, 1980. Prior to the preliminary examination in the criminal action, Sherrill was referred to a psychiatrist and found competent to stand trial. However, the forensic center report was consistent with Sherrill's claim that he has no recollection whatsoever of his actions on the night of December 2, 1980.

In this motion, plaintiff contends that the exclusion for "bodily injury or property damage which is either expected or intended from the standpoint of the insured," relieves plaintiff of the duty to defend or indemnify the insured since the injury to Mrs. Vernier was expected or intended by Sherrill. Interpreting similar policy clauses, Michigan courts have distinguished between an intention to commit the act which results in the harm and the intention to harm. If the *harm* was clearly anticipated, foreseeable and expected, the exclusion applies and the insurer has no duty to defend or indemnify. Conversely, if the insured intended the *act* but not the resulting harm, the exclusion is not called into play. *Putman v. Zeluff,* 372 Mich. 553, 127 N.W.2d 374 (1964); *Morrill v. Gallagher,* 370 Mich. 578, 122 N.W.2d 687 (1963).

Plaintiff argues that the nature of Sherrill's acts as established in the undisputed facts indicate that the harm was clearly anticipated, foreseeable and expected. The Michigan courts concur in plaintiff's argument and have held that absent an allegation of provocation, negligence or accident on behalf of the insured, criminal acts such as Sherrill's which evince a clear causal relationship between act and harm fall within the intentional harm exclusion. *See Kermans v. Pendleton,* 62 Mich.App. 576, 233 N.W.2d 658 (1975) (act in shooting bar patron clearly establishes intent to harm), *Group Insurance Co. v. Morelli,* 111 Mich. App. 510, 314 N.W.2d 672 (1981) (assault and battery by insured establishes intent to harm), *Wright v. White Birch Park,* 118 Mich.App. 639, 325 N.W.2d 524 (1982) (assault and battery by insured establishes intent to harm.)

In response, Sherrill claims that his acute voluntary intoxication resulted not only in an inability to form the intent to harm, but that he lacked the capacity to intentionally *act.* Therefore, Sherrill concludes that his inability to form the intent to act precludes a finding that the resulting harm was intended. Thus Sherrill maintains that plain-

tiff's reliance on *Kermans, Morelli* and *Wright* is ill-founded. Finally, Sherrill argues that the issue of his intent to act or harm is a factual one, requiring the trier of fact to weigh conflicting inferences and thus is inappropriate for summary judgment.

Upon careful review, the Court believes the competing claims and allegations of the parties as set forth above have placed before the Court a more fundamental and perhaps dispositive question of law. Accordingly, the Court must initially determine whether the insured's actions in voluntarily ingesting hallucinogenic drugs and alcohol prevent the insured, as a matter of law, from asserting a lack of capacity defense to an insurer's claimed exclusion under an "intentional injury" clause when that defense is based solely on the effects of the alcohol and/or drugs.

Recognizing the lack of judicial guidance on this issue, the Court believes that if confronted with this question the Michigan Courts would be constrained to hold that such a defense is not available to one whose alleged incapacity results *solely* from a voluntary ingestion of alcohol or drugs.

As indicated in *Kermans, Morelli* and *Wright, supra,* the Michigan courts have not hesitated to infer an intent to harm and thus exclude coverage where the harm results from certain criminal acts. While these decisions are clearly based on sound applications of established legal principles, presumably they are nurtured by public policy concerns weighing against the creation of an unwelcome and potentially damaging precedent. Likewise this Court believes that public policy demands that a voluntary departure of one's good judgment and rational decision-making abilities should not permit the insured to abrogate his financial responsibility to those he brutally injures.

Further, the Court believes the Michigan state legislature would concur in such a holding. Although the legislature has not spoken directly to this issue, the Court is not without their direction. As a matter of policy, the legislators of Michigan have determined that the voluntary consumption of alcohol or drugs may not form the basis of a legal insanity defense to a *criminal* charge. M.C.L.A. § 768.21a(2). Thus Michigan distinguishes between a lack of mental capacity due to mental illness and that which results from acute voluntary alcohol or drug intoxication. In the latter situation, even though a criminal defendant's freedom and liberty are at stake, a defense of voluntary intoxication may not be tendered. To allow such a defense would create an intolerable precedent of self-immunity.

This reasoning applies equally in a civil context. Accordingly, the Court holds that where an insured voluntarily ingests alcohol or drugs he may not assert a defense to an exclusionary clause such as the one at bar based on his lack of capacity to form the intent to act or harm, where that defense is based solely on the effects of the alcohol and/or drugs.

Absent such a defense (indeed the only defense presented), the Court believes, based upon a review of the undisputed facts, that Sherrill's acts clearly fall within the exception for "bodily injury or property damage which is either expected or intended from the standpoint of the insured." *See Kermans, Morelli* and *Wright, supra.*

Plaintiff's motion for summary judgment is GRANTED. A judgment in favor of plaintiff accompanies this Memorandum Opinion and Order.

IT IS SO ORDERED.