******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE FARM FIRE AND CASUALTY COMPANY
*v.* MARK TULLY ET AL.
(SC 19600)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued March 28—officially released August 23, 2016*

*Kirk D. Tavtigian, Jr.*, for the appellant-appellee (defendant Child Doe).

*Ron Murphy*, for the appellee-appellant (named defendant).

*Jack G. Steigelfest*, for the appellee in both appeals (plaintiff).

*Opinion*

ROBINSON, J. The principal issue in these appeals is whether evidence of an insured person's voluntary intoxication may be used, when an insurance policy excludes coverage for intentional acts, to negate intent and thereby establish the insurer's duty to defend the insured person against civil claims arising from sexual misconduct with a minor. The plaintiff, State Farm Fire and Casualty Company, brought this action seeking a declaratory judgment that it owed no duty to defend the named defendant, Mark Tully, under a homeowners insurance policy (policy), in a separate civil action filed on behalf of the defendant Child Doe.[1] The defendants appeal[2] from the judgment of the trial court granting the plaintiff's motion for summary judgment on the ground that, because the policy excluded coverage for acts "intended" by the insured, Tully's actions fell outside the scope of the policy and, thus, the plaintiff had no duty to defend him under the presumption of intent established in *United Services Automobile Assn.* v. *Marburg*, 46 Conn. App. 99, 104–105, 698 A.2d 914 (1997). On appeal, the defendants claim that the trial court improperly rendered summary judgment in favor of the plaintiff because evidence that Tully was intoxicated at the time of the incident created a genuine issue of material fact as to whether his actions were intentional. Specifically, the defendants assert that evidence of voluntary intoxication may negate the intent presumed under *Marburg* and thereby establish an insurer's duty to defend. We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. On July 2, 2012, Doe and two other girls were in the shower area of Winding Trails Park in Farmington. At that time, Doe was fourteen years old and the two other girls were, respectively, thirteen and eight years old. Tully, who was fifty-six years old and "under the influence of intoxicating liquor," approached the three girls and offered to buy them ice cream. After the girls refused, Tully grabbed Doe's breast, nearly removing her bathing suit top. Tully then fondled the buttocks of the eight year old girl in Doe's view.

Doe, by and through her parent as next friend, subsequently filed a civil action against Tully alleging, inter alia, that he "negligen[tly]" sexually assaulted her while he was intoxicated.[3] The plaintiff had previously issued the policy, which provided that the plaintiff would defend Tully against claims resulting from an "occurrence," which is defined in the policy as an "accident," but not from claims resulting from his intentional actions. Tully claimed coverage under the policy, based on his intoxicated state, and requested that the plaintiff defend him in the action.[4] The plaintiff denied coverage, however, on the ground that Doe's claim fell within the

intentional act exclusion of the policy.

In response to this complaint, the plaintiff initiated the present action seeking a declaratory judgment with regard to its duty to defend Tully.[5] The plaintiff moved for summary judgment on the ground that the complaint in the underlying action alleged an intentional act, which fell within the policy's intentional act exclusion of coverage. In response, Tully submitted two affidavits, one from a physician and one from a psychologist, which opined that he was an alcoholic and so intoxicated on the day of the incident that he could not have formed the requisite intent to harm Doe, as well as his own affidavit attesting that he did—and still does— struggle with alcoholism. The defendants argued that this evidence raised a genuine issue of material fact as to whether Tully's actions were intentional.[6] The trial court rendered summary judgment in favor of the plaintiff, concluding that the plaintiff was entitled to rely on *Marburg*, which established a presumption of intent in cases involving the sexual assault of a minor. See *United Services Automobile Assn.* v. *Marburg*, supra, 46 Conn. App. 104. The trial court then stated, more generally, that "voluntary intoxication does not establish a question of intent when defending against an exclusionary clause of an insurance policy." These appeals followed. See footnote 2 of this opinion.[7]

On appeal, the defendants reiterate their claim that evidence of Tully's voluntary intoxication raises a genuine issue of material fact as to whether his actions were intentional and, thus, fall within the intentional act exclusion of the policy.[8] The defendants first claim that the trial court improperly applied the presumption established in *Marburg* because this court overruled that presumption in *Allstate Ins. Co.* v. *Barron*, 269 Conn. 394, 409, 848 A.2d 1165 (2004), which held that the standard for determining whether an insured's intent may be negated for the purposes of an intentional act exclusion is whether the insured was able to understand the wrongfulness of his conduct. Thus, the defendants claim that there was a genuine issue of material fact as to whether Tully was able to understand the wrongfulness of his conduct as a result of his intoxication. Alternatively, should this court apply the *Marburg* presumption, the defendants argue that this court should, as a policy matter, allow evidence of voluntary intoxication to be used to negate that intent. Lastly, the defendants claim that the trial court improperly decided "that an insured's intoxication can never, *as a matter of law*, negate the intent required to invoke the intentional acts exclusion." (Emphasis in original.)

In response, the plaintiff contends that the trial court properly applied the *Marburg* presumption and, thus, there is no genuine issue of material fact that Tully's acts fell within the intentional acts exclusion. The plaintiff also argues that *Barron* clarified the *Marburg* pre-

sumption, rather than overruled it, given that the two cases are factually distinguishable. Finally, the plaintiff argues that this court should not allow evidence of Tully's voluntary intoxication to rebut the *Marburg* presumption, as it would be against public policy to allow evidence of voluntary intoxication to negate intent for the purposes of an intentional exclusion act in an insurance policy.

We agree with the plaintiff and conclude that: (1) the *Marburg* presumption of intentional conduct based on an insured's sexual misconduct with a minor remains good law after *Barron*; (2) the trial court properly applied the *Marburg* presumption in the present case; and (3) evidence of voluntary intoxication may not be used to negate intent in duty to defend cases in which the insured's intent is inferred from the underlying complaint that alleges that the insured committed sexual misconduct with a minor. We, therefore, conclude that the plaintiff satisfied its burden of demonstrating that no genuine issue of material fact exists insofar as the complaint in the underlying civil action alleges intentional acts and, thus, the plaintiff has no duty to defend Tully.

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book [§ 17-45] . . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Allstate Ins. Co.* v. *Barron*, supra, 269 Conn. 405–406.

"The principles governing our determination of

[whether an insurer has a duty to defend] are well settled. [A]n insurer's duty to defend . . . is determined by reference to the allegations contained in the [underlying] complaint. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend. . . . Indeed, [i]f an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured. . . . On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend." (Citations omitted; internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 398–99, 757 A.2d 1074 (2000).

Specifically, "[w]here . . . the policy excludes coverage for damages resulting from intentional acts, the court examines the factual allegations to decide whether both intentional acts and intended results are present." *Middlesex Ins. Co.* v. *Mara*, 699 F. Supp. 2d 439, 449 (D. Conn. 2010). "Moreover . . . Connecticut courts have long eschewed the notion that pleadings should be read in a hypertechnical manner. . . . They thus read the complaint in a manner that advances substantial justice, construing it reasonably to contain all that it may fairly mean." (Citation omitted; internal quotation marks omitted.) Id., 450. "The result is that even when an action is [pleaded] as an unintentional tort [such as negligence], the court examines the alleged activities in the complaint to determine whether the insured intended to commit both the acts and the injuries that resulted. If so, regardless of the title of the action, the court holds the action to be outside the coverage of the policy." Id.

"Furthermore, harmful intent may be inferred at law in circumstances where the alleged behavior in the underlying action is so inherently harmful that the resulting damage is unarguably foreseeable." Id. "Case law is clear that where the provisions in the insurance policy expressly exempt intentional acts of an insured from coverage, the court will grant summary judgment in favor of the insurer who relies upon such exemption." Id., 450–51; see also *United Services Automobile Assn.* v. *Marburg*, supra, 46 Conn. App. 104. When an insurer relies on an exclusionary clause to deny coverage, the initial burden is on the insurer to demonstrate that all the allegations within the complaint fall completely

within the exclusion. *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, supra, 254 Conn. 398–99. If the complaint alleges liability that falls completely within the exclusion, the insurer is not required to defend. Id., 399.

The plaintiff argues that Tully's intent may be presumed in this case as a matter of law under *Marburg* because the complaint in the underlying civil action alleged sexual misconduct with a minor. This requires us to consider the defendants' argument that intent may not be presumed because *Allstate Ins. Co.* v. *Barron*, supra, 269 Conn. 394, overruled the *Marburg* presumption.

In *United Services Automobile Assn.* v. *Marburg*, supra, 46 Conn. App. 100–101, our Appellate Court considered whether an insurer had a duty to defend the defendant, Bonita Marburg, a woman accused of sexually abusing a minor during tutoring sessions. In its motion for summary judgment, the insurer argued that no genuine issue of material fact existed as to whether the allegations fell within the homeowners insurance policy's " 'expected-or-intended injury' " exclusion. Id., 102. The minor and his mother alleged, however, that Marburg's sexual misconduct was a result of a mental disease or defect that negated her intent to harm the minor. Id., 103. The Appellate Court, following an American Law Reports annotation, recognized a presumption of intent for acts of sexual molestation of minors because that act itself is "so heinous that intent to cause harm is presumed as a matter of law." Id., 104, citing annot., 31 A.L.R.4th 957, § 5 (b) (1984); see, e.g., *Gearing* v. *Nationwide Ins. Co.*, 76 Ohio St. 3d 34, 37, 665 N.E.2d 1115 (1996) (observing that, by "1993, the inferred intent standard in cases of sexual molestation of a minor was characterized as the unanimous rule," and that minority approach of considering subjective intent has "largely been abandoned, having been criticized as logically untenable" [internal quotation marks omitted]); see also *Twin City Fire Ins. Co.* v. *Doe*, 163 Ariz. 388, 390, 788 P.2d 121 (App. 1989) (concluding that public policy supports presuming intent to injure with respect to sexual abuse of minors because such acts are not performed under any claim of right or privilege under law, and are in fact crimes); *Horace Mann Ins. Co.* v. *Leeber*, 180 W. Va. 375, 380–81, 376 S.E.2d 581 (1988) (observing that presumption of intent was supported by doctrine of reasonable expectations with respect to policyholder and homeowners insurance carrier).

Applying this presumption and relying on the standard set out in *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 35 Conn. App. 94, 644 A.2d 933 (1994), rev'd on other grounds, 235 Conn. 185, 663 A.2d 1001 (1995), the Appellate Court then reasoned that, "[a]n insured's conduct can be considered unintentional in situations such as those here only if the insured can produce

evidence to show that she did not intend to cause the damage. . . . If the insured cannot show that her behavior was unintentional, the presumption of intent remains intact, and the exclusion of the homeowners policy precludes coverage." (Citation omitted.) *United Services Automobile Assn.* v. *Marburg*, supra, 46 Conn. App. 104–105. The Appellate Court then analyzed the evidence that Marburg provided to rebut the presumption—namely, an affidavit and letter from two physicians describing her mental condition—to determine whether a material issue of fact was in dispute regarding Marburg's ability to form intent. Id., 106–107. Ultimately, the Appellate Court held that the affidavits demonstrated that no genuine issue of material fact existed and, thus, summary judgment was appropriate. Id., 110–11.

Several years later, we decided *Allstate Ins. Co.* v. *Barron*, supra, 269 Conn. 407, a case in which the underlying complaint leading to the insurance coverage dispute alleged, inter alia, that a mother stabbed her husband and one of her children, poured gasoline on herself and the child, and then set fire to the house. The underlying complaint also alleged that, "at the time of these events, [the mother] was suffering from a mental illness or impairment that rendered her incapable either of appreciating the nature, consequences and wrongfulness of her conduct or controlling her actions or both." Id. Specifically, the mother had been diagnosed with postpartum depression, recurrent major depression, and bipolar disorder. Id., 411.

In *Barron*, this court adopted the holding from *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, supra, 35 Conn. App. 94, which was also applied in *United Services Automobile Assn.* v. *Marburg*, supra, 46 Conn. App. 104–107, namely, that "an insured's intent to commit an act may be negated for purposes of an intentional conduct exclusion clause when the insured did not understand the nature or wrongfulness of his conduct, or was deprived of the capacity to control his actions regardless of his understanding of the nature or wrongfulness of his action." (Internal quotation marks omitted.) *Allstate Ins. Co.* v. *Barron*, supra, 269 Conn. 407. We, therefore, determined that the dispositive issue was "not whether [the mother's] actions were intentional in the narrow sense that they were deliberate, but whether her intent was negated by her inability to understand the wrongfulness of her conduct or to control her conduct." Id., 409. Ultimately, this court concluded that, "[t]he documents submitted by the plaintiff in support of its motion for summary judgment simply did not address that issue." Id.

We conclude that *Barron* is inapposite to the present case and does not affect the continuing vitality of the *Marburg* presumption. First, the allegations in the underlying complaint in *Barron* did *not* concern sexual

misconduct with a minor child. Second, the legal propriety of the *Marburg* presumption was not at question in *Barron*. Rather, *Marburg* and *Barron* are both cases in which our courts have adopted and applied the standard set forth in *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, supra, 35 Conn. App. 94, to determine whether an insured adduced evidence sufficient to defeat summary judgment as to whether mental incapacity rendered the relevant actions unintentional under the intentional acts exclusion clause of an insurance policy. *Barron* cited to *Marburg* as a situation in which an insurer had satisfied its burden of demonstrating that no genuine issue of material fact existed with regard to whether the underlying allegations fell completely within the insurance policy's intentional acts exclusion clause, and the insured subsequently failed to proffer sufficient evidence to allow for an inference that the insured was incapable of forming the intent necessary to result in her acts being intentional. *Allstate Ins. Co.* v. *Barron*, supra, 269 Conn. 412. In *Barron*, because there was no claim that the allegations gave rise to a presumption of intent as a matter of law, the insurer had an initially greater burden to demonstrate that there was no genuine issue of material fact on summary judgment than in cases, such as the present one, in which an insurer may rely on a presumption of intent to satisfy its burden on summary judgment. The insurer in *Barron* ultimately had to demonstrate that, despite the allegations within the complaint that the mother suffered from mental disease at the time of the incident, she nevertheless formed the requisite intent to commit the acts, that her acts were intentional, and that the allegations fell completely within the intentional acts exclusion of the policy. Thus, *Barron* did not overrule the *Marburg* presumption; rather, *Barron* clarified the standard for determining whether an insured sufficiently has negated intent in order to defeat summary judgment in favor of the insurer.

Tully also argues in his brief that the *Marburg* presumption should not apply in the present case because the underlying facts in that case are too dissimilar, insofar as *Marburg* concerned allegations of sexual assault, including penetrative intercourse, on at least seventy-three occasions. See *United Services Automobile Assn.* v. *Marburg*, supra, 46 Conn. App. 101. We disagree. In *Marburg*, our Appellate Court, in presuming intent to harm as a matter of law when an insured has engaged in sexual misconduct with a minor, did not consider any restrictions on the type or manner of sexual assault of a minor by an adult. Id., 104–106. This was for good reason. As the Maryland Court of Appeals observed in rejecting an argument that the presumption is inapplicable in a case without a " 'violent' " sexual assault, minor victims of sexual abuse are unable to consent as matter of law, and "[c]hild sexual abuse is an affront to the dignity of the child—an invasion of

the child's autonomy—because a child cannot appreciate or comprehend the full nature of the sexual acts. . . . While it is undoubtedly worse to couple sexual molestation of a child with physical injury, such a distinction differs in degree, not in kind. The essence of child sexual abuse is the violation of the dignitary interest, whether there is physical injury or not." (Citation omitted.) *Pettit* v. *Erie Ins. Exchange*, 349 Md. 777, 783–84, 709 A.2d 1287 (1998). Put differently, the very nature of the act of sexual abuse of minors, "inevitabl[y]" causes injury extending to "emotional harm to minors from sexual abuse in all forms"; *Maryland Casualty Co.* v. *Havey*, 887 F. Supp. 195, 198 (C.D. Ill. 1995); regardless of whether the abuser subjectively meant no harm from his actions, and the abuse was not violent in nature. See, e.g., *Allstate Ins. Co.* v. *Troelstrup*, 789 P.2d 415, 419–20 (Colo. 1990) (rejecting claim that inference should not apply because abuse was not " 'extreme' enough to warrant such a result"); *Scudder* v. *Hanover Ins. Co.*, 201 Ill. App. 3d 921, 929, 559 N.E.2d 559 (1990) (presumption of intent applies to fondling of minor's genitals because of emotional harm, despite lack of force); *Pettit* v. *Erie Ins. Exchange*, supra, 783–87 (presumption applies in case of fondling of minors' genitalia by diagnosed pedophile who subjectively meant no harm and believed his acts were expression of love); *Gearing* v. *Nationwide Ins. Co.*, supra, 76 Ohio St. 3d 40 (concluding that presumption applied in cases of "criminal sexual touching" of children and holding that "[b]ecause harm is inherent in the act of sexual molestation, [insured's] representations that he was subjectively ignorant of the fact that his actions would harm his victims were insufficient to raise a genuine issue of material fact"); *Horace Mann Ins. Co.* v. *Leeber*, supra, 180 W. Va. 379–81 (rejecting insured's reliance on " 'negligent' seduction" in holding presumption applicable to nonviolent fondling of minor's genitalia). Accordingly, we conclude that the *Marburg* presumption is applicable in the present case, despite the fact that the sexual abuse in *Marburg* was far more severe than that alleged in the underlying complaint.[9]

Because we conclude that the *Marburg* presumption remains good law and is applicable in the present case, we now consider the terms of the policy, which excluded coverage for "bodily injury . . . which is either expected or intended by the insured," in light of the allegations contained within the complaint in the underlying civil action. Specifically, we seek to determine whether the allegations of Tully's sexual misconduct with a minor trigger the *Marburg* presumption and, as a result, fall completely within the policy's intentional acts exclusion. The complaint in the underlying civil action alleges that Tully, in an intoxicated state, grabbed Doe's breast and fondled the buttocks of an eight year old child. The complaint then characterizes these allega-

tions as negligence. The complaint alleges that Doe's injuries "were caused by [Tully's] negligence . . . in that [he] was under the influence of intoxicating liquor when he committed these actions." The complaint further alleges that "[a]s a result of [Tully's] negligence and carelessness, [Doe] has suffered bodily and emotional injuries, and has been severely and permanently injured."

Construing the relevant pleadings "broadly," "realistically" and "reasonably, to contain all that it fairly means," but not "contorted in such a way so as to strain the bounds of rational comprehension"; *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 778, 905 A.2d 623 (2006); we conclude that the complaint in the underlying civil action alleged that Tully engaged in sexual misconduct with a minor. That complaint, therefore, alleges presumptively intentional conduct on the part of Tully. First, the complaint alleges that Tully attempted to lure the minor girls by offering to buy them ice cream. The complaint then alleges that Tully grabbed Doe's breast, almost removing her bathing suit top, and fondled the buttocks of an eight year girl. *Marburg* aside, to read these allegations as anything other than sexual misconduct with a minor would be to "strain the bounds of rational comprehension." Id.

Although the defendants contend that the allegations arise from negligence, rather than deliberate sexual misconduct with a minor, we are not persuaded. "[E]ven when an action is [pleaded] as an unintentional tort [such as negligence], the court examines the alleged activities in the complaint to determine whether the insured intended to commit both the acts and the injuries that resulted. If so, regardless of the title of the action, the court holds the action to be outside the coverage of the policy." (Internal quotations marks omitted.) *Middlesex Ins. Co.* v. *Mara*, supra, 699 F. Supp. 2d 450. Nothing about the allegations in the underlying civil action involve a negligent act. That complaint does not, for example, allege that Tully was so intoxicated that he drunkenly fell down and accidentally touched Doe's breast. Rather, the complaint alleges that Tully "proceeded to grab [Doe's] breast, almost completely removing her bathing suit in the process" and "then proceeded to fondle the buttocks of the [eight] year old girl . . . ." Because the complaint in the underlying civil action alleges deliberate sexual misconduct with a minor, we, therefore, conclude that the trial court properly allowed the plaintiff to rely on the *Marburg* presumption of intent in satisfying its initial burden on summary judgment.[10]

Because the *Marburg* presumption of intent is rebuttable, next we turn to the question of whether the defendants have adduced evidence sufficient to raise a genuine issue of material fact as to Tully's intent. See *United Services Automobile Assn.* v. *Marburg*, supra,

46 Conn. App. 104–106. To rebut the *Marburg* presumption, the defendants claim that this court should consider evidence of voluntary intoxication, such as affidavits from physicians or Tully himself, to negate intent. See footnote 6 of this opinion. The plaintiff argues in response that evidence of voluntary intoxication should not be considered to negate Tully's intent. We agree with the plaintiff, and conclude that evidence of voluntary intoxication may not be used to negate intent in situations, as here, in which the defendants seek insurance coverage for a claim arising out of Tully's sexual misconduct with a minor.

This court has not considered previously whether evidence of voluntary intoxication may negate intent in the context of insurance claims arising from sexual misconduct with a minor. This also is a relatively novel issue for the country as a whole. In *Wiley* v. *State Farm Fire & Casualty Co.*, 995 F.2d 457, 465–66 (3d Cir. 1993), the United States Court of Appeals for the Third Circuit described, generally, the three approaches courts across the country have taken to resolve this policy issue.

Under the first approach, intent is inferred based on the nature and character of the act, and the insured's subjective intent to harm is "wholly irrelevant." Id., 465. Under this approach, "any question of the inability to form the intent to harm, whether it arises out of *alleged mental disease or defect or* voluntary intoxication, is immaterial in resolving the insurer's obligation to provide coverage." (Emphasis added.) Id. Put another way, in cases in which intent is inferred, the inference is conclusive, and an insured may *not* rebut that presumption with evidence of lack of capacity to form the requisite intent for the acts to be considered "intentional." See, e.g., *State Farm Fire & Casualty Co.* v. *Estate of Jenner*, 874 F.2d 604, 606–607 (9th Cir. 1989); *Mutual Fire Ins. Co.* v. *Hancock*, 634 A.2d 1312, 1313 (Me. 1993); *American Family Mutual Ins. Co.* v. *Peterson*, 405 N.W.2d 418, 422 (Minn. 1987); *Public Employees Mutual Ins. Co.* v. *Rash*, 48 Wn. App. 701, 705, 740 P.2d 370 (1987); *N.N.* v. *Moraine Mutual Ins. Co.*, 153 Wis. 2d 84, 96, 450 N.W.2d 445 (1990).

Under the second approach, regardless of the character of the act, an insured is precluded entirely from asserting voluntary intoxication as a defense to an intentional acts exclusion in an insurance policy in *any* duty to defend case. *Wiley* v. *State Farm Fire & Casualty Co.*, supra, 995 F.2d 465–66. The reasoning is that "evidence establishing that the insured was under the influence of intoxicants is of no consequence, for the law must not permit the use of such stimuli to become a defense for one's actions." (Internal quotation marks omitted.) Id., 465 Essentially, voluntarily becoming intoxicated should not excuse poor behavior or judgment exercised while intoxicated under any set of facts.

See, e.g., *Capitol Indemnity Corp.* v. *Evolution, Inc.*, 293 F. Supp. 2d 1067, 1074 (D.N.D. 2003); *Allstate Ins. Co.* v. *Sherrill*, 566 F. Supp. 1286, 1288 (E.D. Mich. 1983), aff'd, 735 F.2d 1363 (6th Cir. 1984); *Prasad* v. *Allstate Ins. Co.*, 644 So. 2d 992, 994–95 (Fla. 1994); *Dolan* v. *State Farm Fire & Casualty Co.*, 573 N.W.2d 254, 257 (Iowa 1998); *Group Ins. Co. of Michigan* v. *Czopek*, 440 Mich. 590, 600–601, 489 N.W.2d 444 (1992); *Hanover Ins. Co.* v. *Newcomer*, 585 S.W.2d 285, 289 (Mo. App. 1979); *Beckwith* v. *State Farm Fire & Casualty Co.*, 120 Nev. 23, 27, 83 P.3d 275 (2007).

The third approach deems it appropriate for only a fact finder to consider and determine the insured's intent when an insured claims incapacity to form the requisite intent. *Wiley* v. *State Farm Fire & Casualty Co.*, supra, 995 F.2d 466. Importantly, under this approach, even in situations in which intent is otherwise presumed, "this factual inquiry in effect supersedes scrutiny of the nature and character of the act committed and renders application of the inferred intent rule inappropriate." Id.; see, e.g., *Globe American Casualty Co.* v. *Lyons*, 131 Ariz. 337, 339–40, 641 P.2d 251 (App. 1981); *State Farm Fire & Casualty Co.* v. *Morgan*, 258 Ga. 276, 276–77, 368 S.E.2d 509 (1988); *Hanover Ins. Co.* v. *Talhouni*, 413 Mass. 781, 785–86, 604 N.E.2d 689 (1992); *Burd* v. *Sussex*, 56 N.J. 383, 398–99, 267 A.2d 7 (1970).

We adopt the second approach, and conclude that, as a matter of law, evidence of voluntary intoxication[11] may not be used to negate intent for the purposes of determining whether an insurer owes a duty to defend an insured in cases in which the insured's intent is presumed because the conduct in question involved sexual misconduct with a minor. Under the second approach, evidence of voluntary intoxication may never, in *any* case, serve to negate intent for insurance purposes. *Wiley* v. *State Farm Fire & Casualty Co.*, supra, 995 F.2d 465. For a variety of public policy considerations, we conclude the second approach is persuasive in the context of sexual misconduct with a minor, even without considering whether it extends to other acts.

The first policy consideration for holding that voluntary intoxication should not operate to negate intent is not to relieve the insured of responsibility, financial and otherwise, for his otherwise intentional actions. One federal court, applying Michigan state law, stated that, "public policy demands that a voluntary departure of one's good judgment and rational decision-making abilities should not permit the insured to abrogate his financial responsibility to those he brutally injures." *Allstate Ins. Co.* v. *Sherrill*, supra, 566 F. Supp. 1288. Further, permitting voluntary intoxication to negate intent "would allow commission of a crime without the requisite responsibility" and would "create the ability

to act unwisely without the requisite financial responsibility." *Group Ins. Co. of Michigan* v. *Czopek*, supra, 440 Mich. 601.

Another policy consideration in support of our conclusion that evidence of voluntary intoxication may not negate intent is that, even though a person is intoxicated at the time, the conduct is such that a reasonable insured would not expect it to fall within his policy coverage. See *American Family Mutual Ins. Co.* v. *Peterson*, supra, 405 N.W.2d 422 (voluntary intoxication did not negate intent when man struck woman on head with hammer because reasonable insured would not expect that type of assault to be covered); see also *Dolan* v. *State Farm Fire & Casualty Co.*, supra, 573 N.W.2d 257 (insured cannot claim that intentional assault was unexpected or unintended for purpose of insurance coverage).

Finally, in determining whether evidence of voluntary intoxication should negate intent, some state courts have looked to their state's criminal statutes to determine, as an expression of public policy, whether the legislature would have intended for evidence of voluntary intoxication to negate intent in duty to defend cases. For example, in Michigan, the state's legislators had "distinguishe[d] between a lack of mental capacity due to mental illness and that which results from acute voluntary alcohol or drug intoxication. In the latter situation, even though a criminal defendant's freedom and liberty [were] at stake, a defense of voluntary intoxication [could] not be tendered. To allow such a defense would create an intolerable precedent of self-immunity." *Allstate Ins. Co.* v. *Sherrill*, supra, 566 F. Supp. 1288. The court then applied that distinction to the insurance context, holding that, "where an insured voluntarily ingests alcohol or drugs he may not assert a defense to an exclusionary clause . . . based on his lack of capacity to form the intent to act or harm, where that defense is based solely on the effects of the alcohol and/or drugs."[12] Id.

We find these policy rationales that hold the insured responsible for his intentional actions to be consistent with existing Connecticut statutes and case law. Turning first to our own criminal statutes, we find support in General Statutes § 53a-7.[13] That statute expressly provides that, "[i]ntoxication shall not be a defense to a criminal charge . . . if the actor, due to *self-induced intoxication*, is unaware . . . such unawareness, disregard or failure to perceive shall be immaterial." (Emphasis added.) General Statutes § 53a-7. Further, the official comment following § 53a-7 states that, "where the [criminal] offense is based on recklessness or criminal negligence, unawareness of the actor due to self-induced intoxication does not excuse him. For example, a defendant charged with criminally negligent homicide cannot argue that he was too intoxicated to be

aware of the risks involved in his conduct and therefore should not be held liable for his unawareness." Commission to Revise the Criminal Statutes, Penal Code Comments, Conn. Gen. Stat. Ann. § 53a-7 (West 2012), commission comment. Thus, the statutory language expressly provides that voluntary intoxication does not excuse a defendant from liability for criminal negligence.

We find further legislative support for precluding evidence of voluntary intoxication from negating intent in the insurance context in situations involving the insured's sexual misconduct with a minor within General Statutes § 53a-13,[14] the mental capacity affirmative defense statute. Section 53a-13 expressly precludes voluntary intoxication as a lack of mental capacity defense. Because our legislature specifically precluded voluntary intoxication as a lack of mental capacity defense in the criminal context, we extend that statement of public policy to the insurance context, in which the insured's money, rather than his freedom, is at stake. See *Allstate Ins. Co.* v. *Sherrill*, supra, 566 F. Supp. 1288 (extending legislature's distinction between lack of mental capacity and acute voluntary intoxication in criminal context to civil insurance context).

Finally, the second approach set forth in *Wiley* is consistent with our holding and analysis in *Barron*. Unlike the first approach, which serves as a total bar precluding an insured from presenting *any evidence* of *any* lack of capacity defenses, including evidence of mental disease or defect, in cases in which intent is inferred based on the nature of the act, the second approach allows an insured to present evidence of mental disease or defect, aside from evidence of voluntary intoxication, to negate intent in the insurance context. Thus, we conclude that the second approach is consistent with our case law that allows evidence of mental disease or defect to negate intent.[15] See, e.g., *Allstate Ins. Co.* v. *Barron*, supra, 269 Conn. 408–13 (considering extrinsic evidence to determine whether insured lacked mental capacity to negate intent); *United Services Automobile Assn.* v. *Marburg*, supra, 46 Conn. App. 107–10 (allowing insured to provide affidavits to demonstrate lack of capacity to negate intent, but ultimately finding that evidence was insufficient).

The defendants, however, claim that precluding voluntary intoxication from negating intent would undermine the ability of victims to receive compensation from an insurance company in an automobile accident involving driving under the influence. We disagree. Comparing the situation at hand to an accident involving an intoxicated driver is akin to comparing apples and oranges. In such an accident, a driver voluntarily consumes alcohol, gets behind the wheel of a vehicle, and then accidentally injures another driver or pedestrian on the road. In that situation, an insurance com-

pany would have a duty to defend the intoxicated driver because the injury of the other person was unintentional, however foreseeable.

Here, however, Tully voluntarily consumed alcohol, went to a local park, attempted to lure children, grabbed one child's breast, and fondled the buttocks of another. The act of sexual molestation of minors was not unintentional or accidental. The situation at hand is more similar to a scenario in which a driver voluntarily consumes alcohol, gets behind the wheel of a car, sees a pedestrian in the road and then intentionally hits the person with his vehicle. In that situation, the driver's act of injuring the pedestrian was intentional, despite the driver's voluntary intoxication, which lowered his inhibition.

Accordingly, we conclude that evidence of voluntary intoxication may not negate intent in duty to defend cases in which the insured's intent is inferred from an underlying complaint that alleges the insured committed sexual misconduct with a minor.[16] Applying this rule to the present case, the trial court properly granted the plaintiff's motion for summary judgment because the defendants failed, as a matter of law, to rebut the presumption of intent based on Tully's sexual misconduct with a minor.[17]

The judgment is affirmed.

In this opinion the other justices concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[2] Doe appealed, and Tully cross appealed, from the judgment of the trial court to the Appellate Court, and we transferred the appeal and the cross appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[3] Tully also was arrested and charged with various criminal offenses. He entered a plea of nolo contendere to sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2), unlawful restraint in the second degree in violation of General Statutes § 53a-96, and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). He was sentenced to ten years imprisonment, execution suspended after thirty months, and five years of probation.

[4] The complaint in the underlying civil action was later amended to allege a single negligence claim against Tully.

[5] The plaintiff also sought a determination as to whether it owed a duty to indemnify Tully. The trial court did not decide that issue, however, as it determined that the plaintiff did not have a duty to defend Tully. See *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 688, 846 A.2d 849 (2004) ("[b]ecause the duty to defend is significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify" [internal quotation marks omitted]).

[6] To rebut the presumption of intent, Tully offered affidavits from a licensed physician and a licensed psychologist describing his intoxication at the time of the incident and his alcoholism. First, Tully attached an affidavit from a licensed physician, who averred that "Tully's level of intoxication at the time of the incident was such that it is unlikely he would have maintained the capacity to form intent or to act with an expectation to cause harm or bodily injury." Second, Tully attached the affidavit of a licensed psychologist who conducted a psychological evaluation and sex offender risk assessment on Tully and stated that his "conduct on [July 2, 2012] was the result of excessive alcohol consumption due to his alcohol dependence and . . . that it is unlikely he would have had the intent or

expectation to cause harm or bodily injury . . . before or during the incident at issue." Finally, Tully provided his own affidavit in which he stated that he is an alcoholic and was one at the time of the incident. He also attested that he did not "recall the events of [July 2, 2012] other than drinking alcohol before going to Winding Trails [Park], drinking alcohol while at Winding Trails [Park], and then being arrested." Tully also stated that he did not intend to cause harm to anyone.

[7] We note that, six days before we transferred the appeal to this court, the trial court, *Peck, J.*, rendered judgment by stipulation in the underlying civil action in favor of Doe in the amount of $90,000. This stipulation was entered pursuant to an agreement between the parties in that case. Although the underlying civil action has settled, the defendants are not precluded from pursuing the present appeals. "If the insurer declines to provide its insured with a defense and is subsequently found to have breached its duty to do so, it bears the consequences of its decision, including the payment of any reasonable settlement agreed to by the plaintiff and the insured, and the costs incurred effectuating the settlement up to the limits of the policy." *Capstone Building Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 806, 67 A.3d 961 (2013).

[8] The plaintiff also denied coverage on the ground that Doe's complaint failed to allege an " 'occurrence' " under the policy, defined as an " 'accident,' " claiming that it had no duty to defend Tully because his actions did not fall within the scope of the policy. "A typical definition of the term 'accident' is 'a lack of intention or necessity, often opposed to design; an unforeseen unplanned event; [a] sudden event or change occurring without intent or volition . . . and producing an unfortunate result.' . . . In short, the relevant inquiry in determining whether an accident has occurred is whether the injuries at issue were caused by the intentional design of the insured, or rather, by a sudden, unforeseen event." (Citations omitted.) *Vermont Mutual Ins. Co.* v. *Walukiewicz*, 290 Conn. 582, 594, 966 A.2d 672 (2009). Although this court has sometimes treated the analyses of whether an act constitutes an "occurrence," defined as an "accident," and whether the act falls within the intentional act exclusion separately; see, e.g., id., 597; the ultimate inquiry—whether the act was intentional—is the same. We therefore need not conduct a separate analysis as to whether Tully's actions constitute an "occurrence." See also *Allstate Ins. Co.* v. *Suchecki*, United States District Court, Docket No. 3:12CV01566 (VLB) (D. Conn. February 20, 2014) (concluding that act did not meet definition of " 'occurrence' " under insurance policy, and also that act fell within intentional act exclusion of policy "for the same reasons").

[9] We note that neither of the defendants has asked us to overrule *Marburg* on the ground that the presumption of intent established in that case is doctrinally unsound as a general proposition. Although there was, at one point, a split of authority as to whether a presumption of intent to harm could be inferred as a matter of law in cases concerning the sexual abuse of minors by adults, with the vast majority of state courts adopting the inference, we note that "the supreme courts of the other four states that previously followed the minority approach have all now adopted the majority approach." *State Farm Fire & Casualty Co.* v. *Davis*, 612 So. 2d 458, 464 (Ala. 1993); see *Gearing* v. *Nationwide Ins. Co.*, supra, 76 Ohio St. 3d 37 (describing inferred intent in cases concerning sexual abuse of minors as "unanimous rule" by 1993); see also *Pettit* v. *Erie Ins. Exchange*, supra, 349 Md. 788 and n.5 (discussing resolution of split).

Similarly, neither of the defendants claim that the inferred intent rule is inapplicable on the ground that the girls were not minors, or even that Tully was subjectively unaware of their ages, when he acted in this case. See *Allstate Ins. Co.* v. *Patterson*, 904 F. Supp. 1270, 1282 n.11 (D. Utah 1995) (discussing split of authority with respect to whether inferred intent rule applies when victim is adult); see also *Northern Security Ins. Co.* v. *Perron*, 172 Vt. 204, 214–15, 777 A.2d 151 (2001) (discussing split of authority with respect to whether inferred intent rule should apply when perpetrator is minor, rather than adult).

[10] The defendants also argue that the initial burden was on the plaintiff, as the party seeking summary judgment, to establish the absence of any genuine issue as to Tully's mental condition. We disagree. The initial burden is on the plaintiff to establish that there are no genuine issues of material fact as to whether the allegations fall entirely within the policy exclusion. See, e.g., *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, supra, 254 Conn. 398–99. Because the complaint in the underlying civil action alleges sexual misconduct with a minor, thus

triggering the *Marburg* presumption, the plaintiff satisfied its burden, and the burden then shifted to the defendants to establish that his actions were not intentional, based on the standard set forth in *Allstate Ins. Co.* v. *Barron*, supra, 269 Conn. 407–406. See *United Services Automobile Assn.* v. *Marburg*, supra, 46 Conn. App. 106.

[11] The defendants claim that the plaintiff failed to establish that Tully's intoxication was voluntary rather than involuntary and, thus, there was a genuine issue of material fact that should have defeated the plaintiff's motion for summary judgment as to whether the plaintiff had a duty to defend him. They further claim that the affidavits they submitted support the proposition that his intoxication was involuntary because of his alcoholism. We disagree.

First, the insurer's burden of proof on a motion for summary judgment is to establish that no genuine issue of material fact exists as to its duty to defend. *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, supra, 254 Conn. 397–98. To do so, the insurer must compare the policy terms with the four corners of the complaint. Id., 398–99. Involuntary intoxication is "a very rare thing, and can never exist where the person intoxicated knows what he or she is drinking, and drinks the intoxicant voluntarily, and without being made to do so by force or coercion." 2 Criminal Practice Manual § 40:2 (West 2016). The complaint in the underlying civil action did not allege that Tully's intoxication was involuntary. Rather, it alleged that Tully "approached [Doe] and her friends while he was in an intoxicated state," and that Tully "was under the influence of intoxicating liquor when he committed these actions." On the basis of a reasonable reading of the allegations in a manner not to distort rational comprehension; see, e.g., *Deming* v. *Nationwide Mutual Ins. Co.*, supra, 279 Conn. 778; we do not read the complaint in the underlying civil action to give rise to a genuine issue of material fact as to whether Tully's intoxication was voluntary or involuntary.

[12] On the other hand, the most common policy rationale for allowing evidence of voluntary intoxication to negate intent—and leaving that question for the fact finder to decide—is the public interest in compensating victims. See, e.g., *Hanover Ins. Co.* v. *Talhouni*, supra, 413 Mass. 786 (citing "public interest that the victim be compensated, and the view that the victim is aided by the narrowest view of the policy exclusion" [internal quotation marks omitted]); *Burd* v. *Sussex*, supra, 56 N.J. 398–99 (citing public interest "that the victim be compensated, and the victim's rights being derivative from the insured's, the victim is aided by the narrowest view of the policy exclusion consistent with the purpose of not encouraging an intentional attack"). Although a policy interest in compensating victims exists, that interest must be balanced by the fact that insurance policyholders share a risk, as reflected by the cost of premiums. As the Ohio Supreme Court has aptly observed, "requiring an insurer to indemnify an insured who has engaged in sexual abuse of a child subsidizes the episodes of child sexual abuse of which its victims complain, at the ultimate expense of other insureds to whom the added costs of indemnifying child molesters will be passed," and "the average person purchasing homeowners insurance would cringe at the very suggestion that he was paying for such coverage . . . [a]nd certainly . . . would not want to share that type of risk with other homeowners [policyholders]." (Internal quotation marks omitted.) *Gearing* v. *Nationwide Ins. Co.*, supra, 76 Ohio St. 3d 39.

[13] General Statutes § 53a-7 provides: "Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged, provided when recklessness or criminal negligence is an element of the crime charged, if the actor, due to *self-induced intoxication*, is unaware of or disregards or *fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness*, disregard or failure to perceive shall be *immaterial*. As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body." (Emphasis added.)

[14] General Statutes § 53a-13 provides in relevant part: "(a) In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law.

"(b) It shall not be a defense under this section if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination

thereof, unless such drug was prescribed for the defendant by a prescribing practitioner, as defined in subdivision (22) of section 20-571, and was used in accordance with the directions of such prescription. . . ."

[15] We acknowledge the defendants' reliance on evidence establishing that Tully is alcohol-dependent, and that the actions at issue resulted from excessive intoxication stemming from his alcoholism. To this end, Tully himself claims that his alcoholism was " 'out of control,' " precluding him from forming the intent to harm anyone when he committed the acts at issue in this case. See footnote 6 of this opinion. Consistent with our legislature's pronouncement on this issue, we acknowledge that alcohol dependency, or alcoholism, is itself a recognized mental disease or disorder. See General Statutes § 17a-680 (1) ("'[a]lcohol-dependent person' means a person who meets the criteria for moderate or severe alcohol use disorder, as described in the most recent edition of the American Psychiatric Association's 'Diagnostic and Statistical Manual of Mental Disorders' "); see also *Skakel* v. *Benedict*, 54 Conn. App. 663, 677, 738 A.2d 170 (1999) (statutory privilege for psychiatric records under General Statutes § 52-146d [2] applicable to alcoholism treatment). The defendants do not, however, cite any authorities suggesting that intoxication is any less voluntary as a matter of law when it is spurred by an alcoholic's substance dependency, and, as observed by the plaintiff, the case law on this point holds expressly to the contrary. See *American Family Mutual Ins. Co.* v. *Peterson*, supra, 405 N.W.2d 422 (holding, in hammer attack committed by diagnosed alcoholic, that "voluntary intoxication may not be used to deny an intent to injure one's victim where the circumstances of the assault otherwise compel an inference of intent to injure" and observing that "[n]or do we think that other kinds of assaults, such as rape, if committed in an alcoholic blackout, are within an insured's reasonable expectations of insurance coverage"); see also *State* v. *Johnson*, 327 N.W.2d 580, 582–83 (Minn. 1982) (describing as "weak," and "not . . . accepted in any jurisdiction," defendant's claim "that a chronic alcoholic's intoxication is really involuntary intoxication and that therefore the defense of involuntary intoxication, which applies to all crimes, even general intent crimes, can be raised whenever a chronic alcoholic commits a crime while intoxicated"); *Commonwealth* v. *Kuhn*, 327 Pa. Super. 72, 82, 475 A.2d 103 (1984) ("involuntary intoxication cannot, as a matter of law, be established through evidence showing that the criminal defendant was a chronic alcoholic incapable of voluntarily refraining from ingestion of alcohol"); *State* v. *Allert*, 117 Wn. 2d 156, 167–68, 815 P.2d 752 (1991) (holding that, in absence of statutory direction to consider alcoholism or other addictive diseases in sentencing, "voluntary use of alcohol is an improper factor to consider in deciding whether to impose an exceptionally low sentence"); *State ex rel. Jacobus* v. *State*, 208 Wis. 2d 39, 51–54, 559 N.W.2d 900 (1997) (statute prohibiting prosecution of alcoholic for public drunkenness or consumption of alcohol did not preclude prosecution for violation of bail condition precluding consumption of alcohol); cf. *In the Matter of Moulton*, 198 App. Div. 2d 595, 603 N.Y.S.2d 240 (1993) (rejecting unemployment insurance claim because "[i]t was not claimant's alcoholism but his voluntary disregard of a legitimate condition of employment, the maintenance of an operator's license, which mandated his termination").

[16] We need not, however, consider whether voluntary intoxication may negate intent in cases in which intent is not inferred, as a matter of law, or in cases in which intent is inferred for acts other than sexual misconduct with minors.

[17] Because we hold that evidence of voluntary intoxication may not, as a matter of law, negate intent for purposes of insurance coverage arising out of a claim against the insured for sexual misconduct with a minor, we need not reach the question of whether the evidence presented by the defendants was sufficient to create a genuine issue of material fact.

––––––––––––––––